## Richmond

Margaret H. Floyd, Administratrix, Etc. v. Henry L. Mitchell, Et Al.

January 15, 1962.

Record No. 5347.

Present, All the Justices.

*William Rosenberger, Jr. (Perrow & Rosenberger, on brief), for the plaintiff in error.*

*E. Marshall Frost,* for the defendants in error.

Buchanan, J., delivered the opinion of the court.

Carson W. Floyd, an employee of Glamorgan Pipe and Foundry Company, was struck and killed by a tractor-trailer owned by R. S. Powell, Inc., and operated by Henry L. Mitchell, Powell's employee. His administratrix applied for and was awarded by the Industrial Commission compensation from Glamorgan for his death under the

Workmen's Compensation Act, Code §§ 65-1 *ff.* She also brought this action for damages for wrongful death against Mitchell and his employer, Powell, who filed a special plea asserting that the administratrix was limited to the recovery afforded by the Compensation Act and could not maintain this action at law. Issue was joined on the plea, the court heard the evidence, sustained the plea and dismissed the action.

The question presented on this appeal by the administratrix is whether the defendants, Mitchell and Powell, were "other parties" within the meaning of § 65-38 of the Code, 1960 Cum. Supp., part of the Compensation Act.* The answer is in the application of settled principles to the facts of the case.

Glamorgan Pipe and Foundry is engaged in the business of manufacturing cast iron pipe and selling and shipping it to its customers. After the pipe is manufactured it is stacked on its yard for shipment. Carson W. Floyd was Glamorgan's foreman in the shipping yard, under the supervision of its production supervisor. Floyd supervised and assisted in the loading of the pipes and listing their weight. He had direction of all the men who worked on the shipping yard.

Powell was a contract carrier of property by motor vehicles operating under a permit from the State Corporation Commission. Glamorgan made a contract with Powell to transport pipe to Glamorgan's customers in the various States. Mitchell, one of the defendants and Powell's employee, operated a tractor belonging to Powell on the shipping yard. With the tractor he would pull Powell's trailers from their parking place on Glamorgan's premises and place them for loading at a point designated by Floyd.

The pipes to be loaded were stacked on the shipping yard on both sides of a space wide enough to operate a trailer between the stacks. The pipes were loaded on the trailer by means of a crane owned by Glamorgan and operated by its employees. Hooks were placed in the ends of the pipes and they were then lifted by the crane and placed in layers on the trailer. The layers were separated

---

* "§ 65-38. Subrogation of employer to employee's rights against third parties; evidence; recovery; compromise.—The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. * * *"

on the trailer by wooden cross pieces furnished by Glamorgan and held in position by blocks nailed to the ends of the cross pieces. All the equipment for loading was supplied by Glamorgan.

Mitchell's work was confined to Glamorgan's premises. When the trailer was in position he would get on the front end of it behind the cab of the tractor and assist in the loading operation and see that the weight of the pipe was properly distributed. For this purpose he gave directions to the crane operator and when the pipe was properly placed he would release the hook at his end of it and Glamorgan's employee would release the hook at the other end. After the pipes were placed, Mitchell and Glamorgan's employees would secure them on the trailer with chains and then Mitchell would pull the loaded trailer to its parking place on Glamorgan's premises, where it would be picked up by other of Powell's employees and equipment and transported over the road to its destination.

Mitchell testified that he and Floyd would go together into the small office on the yard, look through the bills and decide which pipe could best be loaded, and Floyd would at times get on the truck and assist in the loading in addition to supervising it. Mitchell said, "We worked it out together," and "It was just a situation where I worked with the foundry. I worked right in with the foundry and would call Mr. Powell and tell him where the trucks were going. I was loading them and dispatching them. That was my job." This procedure had been followed for a number of years prior to the accident. On the day of the accident Mitchell was backing the tractor-trailer between the stacks of pipes to the loading point agreed on with Floyd when, in some way not explained by the evidence, Floyd was run over and killed.

In *Feitig* v. *Chalkley*, 185 Va. 96, 38 S. E. 2d 73, we held that an employee injured by the negligence of a fellow servant was limited to the compensation afforded by the Workmen's Compensation Act, and could not maintain a common-law action for the tort, saying "it was the legislative intent to make the act exclusive in the industrial field so that, in the event of an industrial accident, the rights of all those engaged in the business would be governed solely thereby." 185 Va. at 102, 38 S. E. 2d at 75. There it was also said that when the theory, the history and the broad purpose of the Act are considered, the phrase "other party" [as now in § 65-38] refers exclusively to those who are strangers to the employment and the work.

In *Sykes* v. *Stone & Webster Engineering Corp.*, 186 Va. 116, 41

S. E. 2d 469, we held that the employee of a subcontractor injured when performing work which was part of the trade, business or occupation of the general contractor, could not maintain a common-law action against the general contractor, but was limited to the compensation provided for by the Workmen's Compensation Act. We said in that case, with respect to the first paragraph of § 20(a), as amended by Acts 1924, p. 478:

"\* \* \* The first [paragraph, now § 65-26 of the Code] covers a case where the 'owner' undertakes to perform work which is part of his trade, business or occupation and contracts with a 'subcontractor' to do all or part of it. In that case the owner is liable to pay compensation to any workman employed in the work (by any subcontractor) just as if the workman had been immediately employed by the owner." 186 Va. at 121, 41 S. E. 2d at 471-2.

In *Rea* v. *Ford*, 198 Va. 712, 96 S. E. 2d 92, we held in accord with the principles established in *Feitig* and *Sykes* that the employee of a principal contractor could not maintain a common-law action against a subcontractor who was engaged in an essential part of the work which the principal contractor had to do, and hence was not an "other party" within the meaning of § 65-38 of the Code. In that case we agreed with this statement in *Doane* v. *E. I. DuPont de Nemours & Co.*, (4 Cir.), 209 F. 2d 921, 926:

"\* \* \* The purpose of the Virginia statute as interpreted by its highest court is to limit the recovery of all persons engaged in the business under consideration to compensation under the act, and to deny an injured person the right of recovery against any other person unless he be a stranger to the business."

In *Kramer* v. *Kramer*, 199 Va. 409, 100 S. E. 2d 37, relied on by the plaintiff in the present case, we affirmed a recovery in a law action by the administrators of an employee of one independent contractor against another independent contractor; but as pointed out in the opinion, the evidence there presented a case different from *Feitig* and *Sykes* and *Rea* in that the work of neither independent contractor was part of the trade, business or occupation of the other, nor of the church for which they were doing the work.

In *Anderson* v. *Thorington Construction Co.*, 201 Va. 266, 110 S. E. 2d 396, an employee of a firm of consulting engineers who were employed as an independent contractor by Richmond-Petersburg Turnpike Authority, was not allowed to maintain a common-law action against Thorington, also an independent contractor building

a section of the turnpike, for injuries caused by the negligence of Thorington's employees while he, Anderson, was supervising Thorington's work. This was on the ground that both independent contractors were engaged in the construction of the turnpike which was part of the trade, business or occupation of the owner, the Authority, and neither was a stranger to the employment and the work, and hence Thorington was not an "other party" within the meaning of § 65-38.

Again, in *Williams* v. *Gresham Company*, 201 Va. 457, 111 S. E. 2d 498, the plaintiff, Williams, was held to be limited to his award under the Compensation Act for injuries sustained by him while working with Gresham's employees in driving piles in a slipway. Williams was an employee of Chesapeake Bay Ferry District, which hired from Gresham a crane, its operator and oiler, and some pile-driving equipment to replace piles that were defective in Ferry's dock facilities. Williams worked with Gresham's employees in driving the piles and was injured when the follow-block of the pile-driving equipment fell and struck his hand. He was not allowed to maintain his common-law action against Gresham because Gresham was engaged in work which was part of the trade, business and occupation of Ferry District, Williams' employer, and was not an "other party" within the meaning of § 65-38.

The facts of the present case bring it within the rule of *Williams* v. *Gresham Company* and its predecessors above referred to, and distinguish it from *Kramer*, in which the work being done by independent contractors was not part of the trade, business or occupation of the owner of the building on which they were doing the work.

Glamorgan's trade, business or occupation was manufacturing pipe and selling and shipping it to its customers. Transporting the pipe to the customers was a necessary element of this business. The loading of the pipe on the vehicles that would carry it to its destination was an essential part of this element of the business. Floyd's job was to supervise and assist in the loading process. He and Mitchell, Powell's employee, worked together in this part of Glamorgan's business. Glamorgan contracted with Powell to transport the pipe to Glamorgan's customers, a part of Glamorgan's business which Glamorgan could have done with its own employees and its own equipment had it determined that to be a better way. The fact that it engaged Powell, an independent contractor, to transport the pipe did not make Powell and Mitchell, his employee, strangers to Glamorgan's business. They

were handling a part of it and engaged in it no less than was Gresham engaged in the Ferry District's business in the *Williams* case, or Thorington in Authority's business in the *Anderson* case.

The plaintiff says that the placing of the trailers for loading by means of the tractor was like the act of a railroad company in using a switch engine to place empty freight cars in a position to be loaded, and that in the work of placing and loading the trailers Glamorgan did not become a contract carrier of pipe any more than it would have become a railroad company had the transportation of the pipe been by railroad. The argument misses the point. The test is not whether the owner, by engaging an independent contractor to perform some part of his business, thereby engages in the business of the independent contractor. It is whether the independent contractor is performing work that is part of the trade, business or occupation of the owner. If he is, and in doing the work injures an employee of the owner, then the independent contractor, in the same fashion as any other employee of the owner, is not a third party against whom the injured employee's right of action is preserved; but the employee so injured is limited to the compensation provided by the Workmen's Compensation law, as it has been for many years construed in the cases cited above.

The judgment appealed from is

*Affirmed.*