Marion F. TURNAGE, Robert Gardner, Carey Hightower, Richard Vereen, James Jacobs, Henderson Shaw, and the Home Indemnity Company, Appellants,

v.

NORTHERN VIRGINIA STEEL CORPORATION, Appellee.

No. 9249.

United States Court of Appeals Fourth Circuit.

Argued Jan. 24, 1964.

Decided Sept. 21, 1964.

838

Andrew B. Ferrari, Arlington, Va. (Robert C. Heeney, Rockville, Md., on brief), for appellants.

Oren R. Lewis, Jr., Arlington, Va. (Tolbert, Lewis & FitzGerald, Arlington, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

The sole issue on this appeal involves interpretation and application of the Virginia Workmen's Compensation Act.[1] Plaintiffs are six employees of William Seltzer, a cement finisher, who were injured when the first floor of an apartment building on which they were working collapsed, and Home Indemnity Company. The apartment building, in Arlington, Virginia, known as the Dorchester Towers, was being constructed by Reinsch Construction Company, its owner, as general contractor. Since Reinsch Construction Company had only a few supervisory employees in its service, the construction work was performed primarily by subcontractors. Reinsch Construction Company contracted with architects Sheridan & Behm to design the building; with Fortune Engineering Associates to prepare the structural design; with Northern Virginia Steel Corporation to fabricate and supply the structural steel, steeltex and steel joists; with Monitor Construction Company to erect the steel; with Parker Construction Company to install the steeltex; with William Seltzer to pour and finish the concrete flooring; and with several other concerns to perform additional construction work.

The accident giving rise to plaintiffs' claims for relief was allegedly caused by

1. Va.Code Ann. § 65–1 to § 65–128 (Michie 1950).

the negligence of the defendant, Northern Virginia Steel Corporation, in supplying defective steel bar joists and other steel products for use in the building.[2] Home Indemnity Company, as William Seltzer's workmen's compensation insurance carrier, has paid workmen's compensation benefits and medical expenses to the individual plaintiffs and death benefits to the personal representative of another of Seltzer's employees who was killed in the accident; it bases its claim for relief upon its subrogation rights to the extent of the payments.[3] In its answer Northern Virginia Steel Corporation denied that it was negligent in fabricating the steel and asserted further that the action against it was barred by certain provisions of the Virginia Workmen's Compensation Act. The issue as to Northern Virginia's status under the Act was tried separately. The District Court determined that Northern Virginia was engaged in the business of the owner-builder, Reinsch Construction Company, and, therefore, was under the canopy of the Act and immune from suit at common law. Accordingly, it dismissed the action and plaintiffs appealed.

We think the judgment of the District Court was compelled by the Virginia Workmen's Compensation Act, as interpreted by the Supreme Court of Appeals of Virginia, and should be affirmed. Several provisions of that Act are relevant here.

Section 65-37 (Va.Code Ann. § 65-37, Michie 1950)[4] provides in essence that the rights and remedies granted an employee under the Act shall exclude all others. Although that section's prohibition of other remedies is in terms absolute, an exception thereto is created by section 65-38 which, in pertinent part, provides:

"* * * The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have *against any other party* for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability *of such other party.* * * *" (Emphasis added.)

Under section 65-38 any amount collected by the employer in excess of the amount which he has paid or for which he is liable is held for the benefit of the

2. The architects who designed the building, Sheridan & Behm, and the structural engineer, Fortune Engineering Associates, were originally joined as defendants but at the conclusion of the evidence plaintiffs took a voluntary nonsuit as to them.

3. Provision for the subrogation of an insurance carrier to the rights of an employer is made by Va.Code Ann. § 65-108 (Michie 1950) which in pertinent part provides:
"When any employer is insured against liability for compensation with any insurance carrier, and such insurance carrier shall have paid any compensation for which the employer is liable or shall have assumed the liability of the employer therefor, it shall be subrogated to all the rights and duties of the employer and may enforce any such rights in its own name or in the name of the injured employee or

his or her personal representative; * * *."

4. Section 65-37 is set forth below:
"The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."
As originally enacted, the Compensation Act contained no equivalent of the present § 65-38, and the above section was construed literally to bar common-law actions by an injured employee against any person. See Sykes v. Stone & Webster Engineering Corporation, 186 Va. 116, 41 S.E.2d 469, 471 (1947).

injured employee. The effect of section 65–38, as construed by the Virginia Supreme Court of Appeals, is to preserve, subject to the subrogation rights of the employer, the injured employee's common-law right of action against any "other party." [5] The term "other party" is nowhere defined in the Act but section 65–99, in addition to requiring the employer to maintain insurance for the payment of compensation, provides that "[w]hile such insurance remains in force *he or those conducting his business shall only be liable* to an employee for personal injury or death by accident *to the extent and in the manner herein specified.*" (Emphasis added.)

Interpreting section 65–38 (then section 12) in accordance with the language of section 65–99 (then section 11) and considering "the theory, the history and the broad purpose of the act," the Virginia Supreme Court of Appeals in Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73, 76 (1946), held that the term "any other party" refers exclusively "to those persons who are strangers to the employment and the work, and does not include those who have accepted the act and are within the express terms of section 11— 'he (employer) or those conducting his business.' "

In addition to the sections mentioned, sections 65–26, 65–27 and 65–28 [6] of the Act are particularly pertinent here. Essentially, these sections provide (1) that an owner who contracts with any other person to perform work which is a part of his trade, business or occupation shall be liable under the Act to all employees engaged in the work as if they were employed directly by him; and (2) that a contractor who contracts to perform work for another person (for example, the owner) which work is not a part of such other person's trade, business or occupation, shall be liable under the Act to all employees engaged in such work. As explained in Sykes v. Stone & Webster Engineering Corporation, 186 Va. 116, 41 S.E.2d 469 (1947), the purpose of these sections is

"to bring within the operation of the Compensation Act all persons engaged in any work that is a part of

---

5. See, e.g., Kramer v. Kramer, 199 Va. 409, 100 S.E.2d 37 (1957); Sykes v. Stone & Webster Engineering Corporation, supra note 4; Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946).

6. Va.Code Ann. § 65–26 (Michie 1950) provides:
 "When any person (in this section and §§ 65–28 and 65–29 referred to as 'owner') undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65–28 to 65–31 referred to as 'sub-contractor') for the execution or performance by or under such sub-contractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."
 Va.Code Ann. § 65–27 (Michie 1950) provides:
 "When any person (in this and the four succeeding sections referred to as 'contractor') contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section and §§ 65–28, 65–29, 65–30 and 65–31 referred to as 'sub-contractor') for the execution or performance by or under the sub-contractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if that workman had been immediately employed by him."
 Va.Code Ann. § 65–28 (Michie 1950) states:
 "When the sub-contractor in turn contracts with still another person (in this section and §§ 65–29, 65–30 and 65–31 also referred to as 'sub-contractor') for the performance or execution by or under such last sub-contractor of the whole or any part of the work undertaken by the first sub-contractor, then the liability of the owner or contractor shall be the same as the liability imposed by the two preceding sections."

the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe engaged in that work every such owner, or contractor, and subcontractor, above such employe. But when the employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe is not a part, then that employer is not liable to that employe for compensation under section 20(a) [now §§ 65–26 to 65–29]. At that point paragraph 5 of section 12[7] intervenes and the employe's right of action at common law is preserved." Id. at 41 S.E.2d 472.

 Stated another way, the effect of sections 65–26 to 65–29 in the specified circumstances is to render the owner or contractor the statutory employer of all employees engaged in the work.[8] Thus, the owner is not only liable under the Act to all employees engaged in work which is part of his trade, business or occupation, regardless of how far removed they may be from contractual relationship with him, but in accordance with sections 65–37 and 65–99 he is immune from suit at common law by such employees. Moreover, under section 65–99 those persons conducting the business of the owner or contractor who is made a statutory employer are likewise protected from actions for damages brought by such employees.[9]

 As this court recently emphasized in Bristow v. Safway Steel Products, 327 F.2d 608 (1964), it is the aim of the Virginia Workmen's Compensation Act, as interpreted by that state's highest court, that the financial risk of accidental personal injuries inherent in any project be borne by and limited to that project to the extent specified therein. Consequently, where a project is undertaken either by an owner as part of his trade, business or occupation or by a general contractor, the responsibility in damages of any party to a workman injured in the project must be tested with reference to his relationship to the over-all project. If the defendant was engaged in work which was part of the undertaking of the owner or general contractor, regardless of his relationship to the injured workman and his immediate employer, the sections previously mentioned operate to place the economic loss upon the project and to limit the workman's recovery to that specified in the Act. On the other hand, where the injury was caused by the negligence of one not engaged in the over-all undertaking, a "stranger to the business," it is not an accident inherent in the project, the cost of which should ultimately be borne by the project, and the injured workman's rights and remedies outside of the statute are preserved.[10]

7. Paragraph 5 of section 12 mentioned in the Sykes case is now Va.Code Ann. § 65–5 (Michie 1950) which states that "[n]othing in this Act contained shall be construed to make, for the purposes of this Act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor."

8. Home Indemnity Company of New York v. Poladian, 270 F.2d 156 (4 Cir. 1959); Anderson v. Thorington Construction Company, 201 Va. 266, 110 S.E.2d 396 (1959).

9. See, e.g., Floyd v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962); Anderson v. Thorington Construction Company, 201 Va. 266, 110 S.E.2d 396 (1959).

10. Applying the test above suggested, this court and the Supreme Court of Appeals of Virginia have held that an employee could not sue his fellow servant for injuries sustained in the course of his work (Lucas v. Biller, 204 Va. 309, 130 S.E.2d 582 (1963); Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946)); that the employee of a subcontractor engaged in the work of the general contractor could not sue the general contractor (Sykes v. Stone & Webster Engineering Corporation, 186 Va. 116, 41 S.E.2d 469 (1947)); that an employee of a general contractor could not sue a subcontractor engaged in

■ In the instant case it is undisputed that the construction of the apartment building was a part of the business of Reinsch Construction Company as owner and general contractor. The injured workmen who were working as cement finishers and helpers in the employ of a subcontractor, William Seltzer, at the time of the accident were unquestionably engaged in the work undertaken by Reinsch Construction Company and under sections 65–26 to 65–29 became its statutory employees. The crucial inquiry is whether the defendant, Northern Virginia Steel Corporation, was also engaged in the work of Reinsch Construction Company.

Plaintiffs take the position that Northern Virginia was a mere supplier of steel and, as such, was not engaged in the business of Reinsch Construction Company. We think this position is untenable. The evidence disclosed that the activities of Northern Virginia in connection with the construction project went far beyond the mere fabrication and supplying of steel. In the latter part of 1959 Northern Virginia contracted with Reinsch Construction Company to fabricate the structural steel, steel bar joists and steeltex for use in the project. The quantity, size and tensile strength of the steel required was determined from the preliminary drawings prepared by the structural engineer, George Fortune, and a tentative price, covering only the fabrication of steel, was agreed upon. The steel joists had to be custom built, that is, they had to be fabricated to meet the requirements of the particular project. Northern Virginia designed the joists and prepared erection drawings which, in detail, went significantly beyond the basic structural plan prepared by the structural engineer. Perhaps the activities of Northern Virginia to that point were consistent with plaintiffs' characterization of it as a mere supplier. However, its activities did not stop there. Employees of Northern Virginia were required to visit the job site on a number of occasions in order to make field measurements, a task which the evidence indicated is by trade-custom and practice the responsibility of the owner or general contractor. Furthermore, the evidence disclosed that Emerson G. Reinsch, the owner and manager of Reinsch Construction Company, decided to make a number of changes in the design and structure of the building as the work progressed. These changes, which included the substitution of masonry walls for the concrete walls originally planned, changes in the size of individual apartments and the addition of a putting green on the roof, required Northern Virginia to make extensive alterations in the erection drawings and in the design of the structural steel and steel joists. Additionally, because of errors committed by other building trades engaged in the construction, employees of Northern Virginia visited the job site on a number of occasions to there make alterations in the steel. On one occasion, for example, due to irregularities in the masonry walls, a crew of Northern Virginia employees

the general contractor's work (Rea v. Ford, 198 Va. 712, 96 S.E.2d 92 (1957)); that an employee of the owner could not sue subcontractors engaged in the owner's business (Doane v. E. I. du Pont de Nemours & Co., 209 F.2d 921 (4 Cir. 1954); Floyd v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962); Williams v. E. T. Gresham Co., 201 Va. 457, 111 S.E. 2d 498 (1959)); and that the employee of one independent contractor engaged in the business of the owner could not sue another independent contractor engaged in that business (Anderson v. Thorington Construction Company, 201 Va. 266, 110 S.E.2d 396 (1959)).

On the other hand, this court has held that the employee of a subcontractor engaged in work which was not a part of the trade, business or occupation of the owner could maintain an action for damages against the owner. Sears, Roebuck & Co. v. Wallace, 172 F.2d 802 (4 Cir. 1949). Similarly, where the work being performed was not a part of the owner's trade, business or occupation and there was no general contractor, Virginia's highest court held that the employee of one independent contractor engaged in the work could sue another independent contractor. Kramer v. Kramer, 199 Va. 409, 100 S.E.2d 37 (1957).

was required to cut and shorten some two hundred steel joists on the job site. On other occasions crews of Northern Virginia employees visited the job site to alter a balcony frame and to work on steel canopies, cutting and welding steel.

The record also indicates that Northern Virginia was frequently called upon by Reinsch and his superintendents for construction and engineering advice. Clarence Roberts, chief engineer for Northern Virginia, testified that he visited the job site at least twice a week and frequently was consulted by Reinsch and the job superintendents about construction problems. James Baxter, Northern Virginia's vice president, testified that he and Roberts were frequently called to the job site in connection with various problems of construction, once to offer advice as to how chairs could be anchored to the floors of the apartments to keep them from being stolen. The record also indicates that Northern Virginia employees were subject to a significant amount of supervision by Reinsch and his superintendents and felt compelled to comply with their directives. The final price received by Northern Virginia included, in addition to the price of the fabrication of steel, charges for alterations, services in the field and construction advice. Manifestly, the total picture suggested by these recited circumstances is not that of a mere fabricator or supplier of steel.

In support of their position, plaintiffs rely principally upon Garrett v. Tubular Products, Incorporated, 176 F.Supp. 101 (E.D.Va.1959), a case decided by the same District Judge who decided the case below. Involved in that case was an action brought by an employee of one of the subcontractors engaged in work in connection with the construction of a parking garage who was injured during the unloading of steel columns to be used in the construction. The defendants were Tubular Products, Incorporated, the fabricator of the steel columns, and its employee, Jett, whose negligence alleged-

ly caused the plaintiff's injury. On a motion for summary judgment, the court held that the defendants were "other parties" within the meaning of section 65-38 of the Compensation Act and, therefore, amenable to suit at common law. A mere reading of the Garrett case discloses that it is readily distinguishable from the case here. There, the defendant Tubular was in fact a mere supplier of steel.

In the circumstances here, we think the conclusion is inescapable that Northern Virginia, unlike Tubular, was directly concerned with and actively engaged in the construction of the Dorchester Towers project. Unlike a mere supplier, it did not simply fill an order for a product. On the contrary, the work of Northern Virginia, like that of other contractors engaged in the project, was closely related to and dependent upon the work of the other trades and when changes in the steel were required, either by modifications in design or errors of other trades, it went to the job site and made them. By performing such work which was the responsibility of the general contractor, by giving advice relative to various construction problems and by working generally under Reinsch's supervision, Northern Virginia was conducting the business of Reinsch Construction Company. In Doane v. E. I. du Pont de Nemours & Co., 209 F.2d 921, 926 (1954), this court concluded that the purpose of the Virginia Workmen's Compensation Act is "to limit the recovery of all persons engaged in the business under consideration to compensation under the act, and to deny an injured person the right of recovery against any other person unless he be a stranger to the business." We adhere to that conclusion. Northern Virginia was not a stranger to the business; it is within the coverage of the Act and immune from suit at common law. Accordingly, the judgment of the District Court is

Affirmed.