**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID WAYNE EVANS,
Plaintiff-Appellant,

v.

B. F. PERKINS COMPANY, a division
of Standex International
Corporation; DIVERSIFIED
CONVERTERS, INCORPORATED; E. I.

DUPONT DE NEMOURS AND COMPANY,
INCORPORATED,
Defendants-Appellees,

and

MEDICAL COLLEGE OF VIRGINIA
HOSPITALS AUTHORITY,
Party in Interest.

No. 98-1002

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-97-522)

Argued: October 28, 1998

Decided: January 28, 1999

Before ERVIN and HAMILTON, Circuit Judges, and
MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion in
which Judge Ervin joined. Judge Moon wrote a separate opinion con-
curring in part and dissenting in part.

**COUNSEL**

**ARGUED:** Bradford Manson Young, Karl Lloyd Santone, CHANDLER, FRANKLIN & O'BRYAN, Charlottesville, Virginia, for Appellant. Raymond Michael Ripple, E.I. DUPONT DE NEMOURS AND COMPANY, Wilmington, Delaware; Philip Browder Morris, MORRIS & MORRIS, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Lawrence B. Chandler, Jr., CHANDLER, FRANKLIN & O'BRYAN, Charlottesville, Virginia, for Appellant. Donna L. Goodman, E.I. DUPONT DE NEMOURS AND COMPANY, Wilmington, Delaware; Ann Adams Webster, MORRIS & MORRIS, P.C., Richmond, Virginia; H. Aubrey Ford, III, CANTOR, ARKEMA & EDMUNDS, Richmond, Virginia, for Appellees.

_____

**OPINION**

HAMILTON, Circuit Judge:

David Evans appeals the district court's order dismissing his Virginia common law action against E. I. du Pont de Nemours and Company, Incorporated (Du Pont) and two of Du Pont's independent contractors, Diversified Converters, Incorporated (DCI) and B. F. Perkins Company (Perkins),[1] to recover damages for injuries he sustained in an industrial accident at DCI's plant in Chester, Virginia, on March 28, 1996, allegedly as a result of the defendants' negligence and breach of warranties. The district court concluded that it lacked subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), over Evans' Virginia common law action because under the Virginia Workers' Compensation Act, Va. Code Ann. §§ 65.2-100 to 65.2-1310 (VWCA or the Act), Du Pont and DCI were statutory employers of Evans, and Perkins was Evans' fellow statutory employee, and, therefore, the defendants were immune from Evans' Virginia common law action under the VWCA, which provides the exclusive remedy for Evans. For the reasons stated below, we affirm.

_____

[1] We will refer to Du Pont, DCI and Perkins collectively as "the defendants."

2

I

Du Pont is a global chemical and energy company that manufactures, among other products, TYVEK. TYVEK is a synthetic paper replacement used as construction sheeting material. Prior to the mid-1990's, Du Pont produced TYVEK in four steps: step one was the production of rolls of high-density polyethylene fibers; step two involved the thermal heat and pressure bonding of the polyethylene fiber rolls into sheets for various end-use applications; step three was the printing of logos on the sheets; and step four involved the conversion of the sheets into small rolls according to customer width and length specifications.

In the mid 1990's, Du Pont decided to diversify its TYVEK sheeting business by offering market-specific TYVEK products. Du Pont contracted with Perkins for Perkins to develop a machine to allow Du Pont to produce market-specific TYVEK products, to develop an operating procedure for the new machine, to demonstrate the use of the machine applying the operating procedure, and to supply the auxiliary safety equipment for the machine.

In compliance with its contract with Du Pont, Perkins designed and produced the "TCP machines." The TCP machines added a new thermal embossing step to the TYVEK processing. The TCP machines combined this new thermal embossing step with the previously used thermal bonding step and the previously used logo printing step. This new thermal embossing step, which required the changing of embossing rolls, enabled Du Pont to produce market-specific TYVEK products. Also, in accordance with its contract with Du Pont, Perkins developed a "Roll Changing System Operating Procedure" (Roll Changing Procedure or TCP Roll Changing Procedure) for Du Pont's TCP machines. This Roll Changing Procedure set forth the steps for changing the rolls on Du Pont's TCP machines and also designated exactly what auxiliary safety equipment Perkins and Du Pont would supply for the roll changes, including Perkins' roll change demonstration.

At this same time, Du Pont contracted with DCI for DCI to complete the processing of TYVEK at the DCI plant in Chester, Virginia. Specifically, Du Pont contracted with DCI for DCI to perform the

new thermal embossing step and the final step of converting the TYVEK rolls into smaller rolls for Du Pont's customers. DCI agreed to use Du Pont's TCP machines to perform the thermal embossing step and agreed to follow Du Pont's procedure for roll changes, developed by Perkins.

After designing and producing the TCP machines and developing the TCP Roll Changing Procedure for Du Pont, Perkins still had some obligations to fulfill under its contract with Du Pont. In an effort to comply with its remaining obligations, Perkins subcontracted with M&R Constructors, Incorporated (M&R), for M&R to demonstrate the roll change on Du Pont's TCP machines at the DCI plant on March 11-13, 1996. Further, as required by the Du Pont-Perkins contract, Perkins provided DCI with Du Pont's TCP Roll Changing Procedure for use during the March 11-13 roll change and also supplied DCI with auxiliary safety equipment necessary for the March 11-13 roll change and future roll changes.

On March 11-13, 1996, M&R, under the direction of Perkins, performed the roll change on Du Pont's TCP machines at DCI. Evans, an employee of M&R, participated in the roll change. During the roll change, Perkins, DCI, and M&R discussed and analyzed Du Pont's TCP Roll Changing Procedure and modified the procedure to the satisfaction of Du Pont and DCI.

The next roll change on Du Pont's TCP machines at DCI was scheduled for March 28, 1996. Under its contract with Du Pont, DCI was responsible for the completion of the March 28 roll change. DCI subcontracted with M&R for the M&R crew, who had participated in the March 11-13 roll change, to complete the March 28 roll change.

On March 28, 1996, prior to the roll change, an M&R employee performed work for Perkins on Du Pont's TCP machines at DCI. Later that day, the M&R crew hired by DCI arrived at DCI to change the rolls on the TCP machines. Evans, M&R's employee, was part of this M&R roll change crew. No representative of Perkins was present for the roll change. During the roll change, one of the seven and one-half ton embossing rolls fell on Evans' leg, causing severe injuries. As a result of his injuries, Evans lost his right leg below the knee, three toes from his left foot, and a portion of his left foot.

4

On July 10, 1997, Evans filed this diversity action in the United States District Court for the Eastern District of Virginia against Du Pont, DCI and Perkins. See 28 U.S.C.§ 1332. Pursuant to Virginia common law, Evans sought to recover damages from the defendants for the injuries he sustained in the roll change accident at DCI's plant in Chester, Virginia, on March 28, 1996, allegedly as a result of the defendants' negligence and breach of warranties. Specifically, Evans averred he sustained injuries because (1) Du Pont negligently designed, developed, manufactured, and distributed the TCP machines and its operating procedure; (2) Perkins negligently designed, developed, and produced the TCP machines and the TCP Roll Changing Procedure; (3) DCI negligently modified the TCP Roll Changing Procedure and negligently conducted the March 28 roll change; and (4) Du Pont, DCI and Perkins breached their warranties that the TCP machines, the auxiliary safety equipment, and the modified TCP Roll Changing Procedure "were safe." (J.A. 12-14).

Du Pont, DCI and Perkins filed motions to dismiss Evans' Virginia common law action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming the district court lacked subject matter jurisdiction over Evans' action because Evans' sole remedy was pursuant to the VWCA. Specifically, Du Pont and DCI claimed Evans' sole remedy was under the VWCA, because Evans was a statutory employee of Du Pont and DCI. Perkins contended Evans' sole remedy was pursuant to the VWCA because Perkins and Evans were fellow statutory employees of Du Pont.

After hearings on the motions to dismiss, the district court entered an order granting Du Pont, DCI and Perkins' motions to dismiss Evans' Virginia common law action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The district court concluded that DCI, in contracting for the changing of the TCP rolls, performed a part of Du Pont's business of processing TYVEK. Therefore, the district court concluded that under the VWCA, Du Pont and DCI were statutory employers. With regard to Perkins, the district court recognized that Du Pont contracted with Perkins for Perkins to develop the procedure for the TCP roll changes, DCI followed the procedure developed by Perkins during the March 11-13 roll change, and DCI used a modified version for the March 28 roll change. The district court, without further discussion, granted Perkins' motion to dismiss

5

on the ground that it and Evans were fellow statutory employees of Du Pont, and, therefore, Evans' sole remedy was pursuant to the VWCA. Evans noticed a timely appeal of the district court's order granting the defendants' motions to dismiss.[2]

On appeal, Evans contends that the district court erred in granting the defendants' Rule 12(b)(1) motions to dismiss his Virginia common law action for lack of subject matter jurisdiction. Specifically, Evans contends that the TCP Roll Changing Procedure that DCI contracted with M&R for M&R to perform was not part of Du Pont's business, and, therefore, Du Pont and DCI were not statutory employers under the VWCA. With regard to Perkins, Evans contends that Perkins may not claim to be Du Pont's statutory employee under the VWCA because developing the TCP Roll Changing Procedure was not part of Du Pont's business, and furthermore, because Perkins had completed the development of Du Pont's TCP Roll Changing Procedure prior to the March 28, 1996 accident.

II

The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. A district court's dismissal of a case

_____

[2] Following the entry of the defendants' motions to dismiss, Evans moved pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) for the district court to alter or amend judgment by more fully discussing the basis for the dismissal of his claims against Perkins. The district court denied the motions because it found its discussion of Perkins' dismissal adequate and because Evans did not establish that "the alleged deficiency amount[ed] to a clear error of law." Evans does not appeal the denial of these motions.

for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is subject to de novo review.3 See id. at 768-69.

III

We first address Evans' contention that the district court erred in dismissing his Virginia common law negligence and breach of warranties claims against Du Pont and DCI. Evans avers that Du Pont and DCI do not qualify under the VWCA as statutory employers, and, therefore, are not immune from his Virginia common law action. We disagree.

The VWCA provides that a worker who is injured in the course of a statutory employer's trade, business or occupation shall be entitled to compensation from his statutory employer for his injuries without regard to fault. See Va. Code Ann. § 65.2-307. If the injured employee elects to recover workers' compensation from his statutory employer, his recovery "shall exclude all other rights and remedies . . . at common law or otherwise." Id. The injured employee, however, is not prohibited by the VWCA from seeking common law remedies from employers who are not within the scope of the VWCA's exclusion -- not statutory employers but strangers to the covered employment relationship and work. See id.

The VWCA specifies the circumstances under which original contractors (owners) qualify as statutory employers of employees of general contractors and subcontractors. See Va. Code Ann. § 65.2-302. Under § 65.2-302(A), if an owner contracts with a general contractor for the general contractor to perform work that is part of the owner's trade, business or occupation, the owner becomes the "statutory

_____

3 To the extent Evans contends the district court considered matters outside the pleadings, and, therefore, converted the defendants' Rule 12(b)(6) motions into motions for summary judgment, thereby entitling him on appeal to have the evidence reviewed de novo and in the light most favorable to him, we conclude his claim is unavailing. The district court dismissed Evans' claims under Rule 12(b)(1), and, therefore, the district court's consideration of matters outside the pleadings did not convert the proceeding into one for summary judgment. See Richmond, 945 F.2d at 768.

7

employer" of the general contractor's employees. Further, if the general contractor then, in turn, contracts with a subcontractor for the subcontractor to perform part of the owner's work that the general contractor agreed to perform, the owner becomes the"statutory employer" of the subcontractor's employees. See id. In such a circumstance, the general contractor is also the statutory employer of the subcontractor's employees. See Turnage v. Northern Virginia Steel Corp., 336 F.2d 837, 841 (4th Cir. 1964) (stating that under the VWCA "those persons conducting the business of the owner or contractor who is made a statutory employer are likewise protected from actions for damages brought by such employees"); Floyd v. Mitchell, 123 S.E.2d 369, 372 (Va. 1962); Anderson v. Thorington Const. Co., 110 S.E.2d 396, 400 (Va. 1959); see also Evans v. Hook, 387 S.E.2d 777, 779 (Va. 1990) (holding that independent contractors, even though they are not the common law employer of the injured employee and are not paying workers' compensation benefits to the injured employee, "are entitled to the immediate employer's statutory immunity from common law actions" if they are engaged in the owner's business). As statutory employers, owners and general contractors are shielded from common law liability for the injuries sustained during the performance of the owners' work. See § 65-2.307.

The VWCA also specifies the circumstances under which general contractors that contract to perform work which is not part of the owner's trade, business or occupation become statutory employers of the employees of subcontractors. Section 65.2-302(B) provides that when a general contractor contracts to perform work for an owner that is not a part of the owner's trade, business or occupation, and then, in turn, contracts with a subcontractor for the subcontractor to perform any part of the work the general contractor agreed to perform, the general contractor becomes the "statutory employer" of the subcontractor's employees. As such, the general contractor becomes immune from actions at law by the subcontractor's employees for any injuries sustained by such employees during the performance of the contracted work. See § 65.2-307.

The Virginia Supreme Court, applying the language of § 65.2-302(A) of the VWCA, has stated that when deciding whether an owner is a statutory employer of a general contractor or subcontractor's injured employee, the focus is on whether the general contractor

8

or subcontractor's employee is performing work that is a part of the owner's trade, business or occupation. See Cinnamon v. IBM Corp., 384 S.E.2d 618, 621 (Va. 1989). Similarly, the Virginia Supreme Court, applying the language of § 65.2-302(B) of the VWCA, has stated that when deciding whether a general contractor is a statutory employer of a subcontractor's employee, the focus is on whether the subcontractor's employee is performing work that is not part of the owner's trade, business or occupation, but is part of the work which the general contractor agreed to perform for the owner. See id. The Virginia Supreme Court has noted that the determinations of statutory employer status are case-specific. Id. However, in Shell Oil Co. v. Leftwich, 187 S.E.2d 162 (Va. 1972), the Virginia Supreme Court adopted a test set forth in Arthur Larson's treatise entitled The Law of Workmen's Compensation to aid courts in determining whether a general contractor or a subcontractor's employee is performing work which is part of the owner's trade, business or occupation, as now defined in § 65.2 302(A),(B): "`The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, [n]ormally carried on through employees rather than independent contractors.'" Shell Oil, 187 S.E.2d at 167 (quoting 1A Arthur Larson, The Law of Workmen's Compensation § 49.12, at 872-73). The Virginia courts have interpreted the language of § 65.2-302 and the language from Shell Oil as setting forth a "normal work test"/"Shell Oil test" and a "subcontracted fraction exception" to the Shell Oil test.**4** See Cinnamon, 384 S.E.2d at 620.

The normal work test, as defined by the Virginia Supreme Court, relates to the determination of whether an owner is the statutory employer of the employees of the owner's general contractors or sub-

_____

**4** The Virginia Supreme Court acknowledges that the Shell Oil test is "only a corollary guide, sometimes useful but not indispensable, in applying the literal language of [§ 65.2-302] to the facts in a particular case." Cinnamon, 384 S.E.2d at 621. Thus, if the Virginia Supreme Court determines that the application of the Shell Oil test or its exception is not necessary, the court simply applies the language of the VWCA to the facts of the case. See Cinnamon, 384 S.E.2d at 621. As discussed below, we determine this case appropriate for application of the "subcontracted fraction exception."

9

contractors in the circumstances set forth in § 65.2-302(A). <u>See</u> <u>Cinnamon</u>, 384 S.E.2d at 620. Specifically, the Virginia Supreme Court has defined the normal work test as follows:

> If the work out of which the industrial accident arose is, in the language of <u>Shell Oil</u>, work "normally carried on through [the owner's] employees rather than independent contractors", [sic] it is, in the language of the statute, a "part of [the owner's] trade, business or occupation". [sic] In such case, the owner is the statutory employer of the injured worker, whether directly employed by the independent contractor or by a subcontractor.

<u>Cinnamon</u>, 384 S.E.2d at 620.

The subcontracted fraction exception to the normal work test, as defined by the Virginia Supreme Court, relates to the determination of whether a general contractor is the statutory employer of a subcontractor's employees in the circumstances set forth in § 65.2-302(B). Specifically, the Virginia Supreme Court has defined the subcontracted fraction exception as follows:

> If the work out of which the accident arose was, in the language of <u>Shell Oil</u>, "obviously a subcontracted fraction of [that] contract" and, in the language of the statute, "not part of the trade, business or occupation of" the owner, the general contractor who engaged the subcontractor to perform that fraction is the statutory employer of the injured worker, whether directly employed by the primary subcontractor or by a secondary subcontractor.

<u>See Cinnamon</u>, 384 S.E.2d at 620 (alteration in original).

In their application of the <u>Shell Oil</u> test, Du Pont and DCI contend that the changing of the embossing rolls on the TCP machines was a subcontracted fraction of Du Pont's "main business concern" of processing TYVEK. We agree and, therefore, conclude that under § 65.2-302(B), Du Pont and DCI qualify as Evans' statutory employers and, as such, are immune from Evans' Virginia common law action.

10

At first glance, the language of the VWCA appears, see § 65.2-302(B), to indicate that the subcontracted fraction exception might apply only to contractors and not to owners. Section 65.2-302(B), from which the Virginia Supreme Court derived the subcontracted fraction exception, relates to the determination of whether a general contractor is the statutory employer of a subcontractor's employees. However, "Virginia case law does not indicate . .. that the subcontracted fraction exception applies only to `contractors' who contract to perform work for other entities." Bowling v. Wellmore Coal Corp., 114 F.3d 458, 462 (4th Cir. 1997).

The seminal case in which the Virginia Supreme Court determined that the subcontracted fraction exception may apply to owners is Smith v. Horn, 351 S.E.2d 14 (Va. 1986). In Smith, the owner of a mining company engaged two independent contractors to mine coal on land owned or leased by the owner and to transport coal to the owner's plant for processing. See id. at 15. An employee of one of the independent contractors was injured when he was performing the work of the owner. See id. The trial court determined, and on appeal the Supreme Court of Appeals of Virginia affirmed, that the owner qualified as the statutory employer of the contractor's employee under the subcontracted fraction exception to the Shell Oil test because the contractor's employees were executing a subcontracted fraction of the owner's main business concern. See Smith, 351 S.E.2d at 15, 17-18.

Therefore, under the Virginia Supreme Court's holding in Smith, Du Pont, the owner, may qualify under the subcontracted fraction exception as the statutory employer of Evans if Evans was performing part of Du Pont's main business concern when he was changing the TCP machines' rolls at DCI on March 28, 1996. See id. If Du Pont, as owner, qualifies as Evans' statutory employer, then DCI, as a general contractor of Du Pont also qualifies as Evans' statutory employer. See Turnage, 336 F.2d at 841; Floyd, 123 S.E.2d at 372; Anderson, 110 S.E.2d at 400; see also Evans, 387 S.E.2d at 779.

In determining whether Du Pont and DCI qualify as Evans' statutory employers, the question before us is whether Evans, in changing the rolls, was performing part of Du Pont's main business concern. Du Pont was engaged in the business of processing TYVEK. Du Pont contracted with DCI, an independent contractor, for DCI to perform

11

a fraction of Du Pont's main business concern of processing TYVEK, specifically, for DCI to complete the final stages of processing Du Pont's TYVEK using Du Pont's new machines and using Du Pont's TCP Roll Changing Procedure. As part of the final stages of processing Du Pont's TYVEK, DCI was required to perform or contract for the performance of roll changes on Du Pont's TCP machines. DCI contracted with M&R for M&R to complete the March 28 roll change. Because Evans, as an employee of M&R, in performing the March 28 roll change, was engaged in work that was part of Du Pont's main business concern of processing TYVEK, Du Pont was Evans' statutory employer and is immune from Virginia common law action for injuries sustained during the March 28 roll change. See Smith, 351 S.E.2d at 15. Further, because DCI, in contracting for the performance of roll changes in order to complete the processing of Du Pont's TYVEK, was conducting part of a main business concern of Du Pont, which we conclude is a statutory employer, DCI is likewise protected from Virginia common law action by Evans for injuries sustained during the performance of such work. See Turnage, 336 F.2d at 841; Floyd, 123 S.E.2d at 372; Anderson, 110 S.E.2d at 400; see also Evans, 387 S.E.2d at 779.

In sum, because we conclude that Du Pont and DCI were Evans' statutory employers, we agree with the district court's conclusion that Evans' sole remedy against Du Pont and DCI is pursuant to the VWCA. Accordingly, we affirm the district court's dismissal of Evans' Virginia common law action against Du Pont and DCI for lack of subject matter jurisdiction.

IV

Next, we turn to Evans' contention that the district court erred in granting Perkins' motion to dismiss Evans' claims that Perkins negligently developed Du Pont's TCP Roll Changing Procedure and breached its warranties that Du Pont's TCP Roll Changing Procedure "was safe," on the ground that Perkins and Evans were fellow statutory employees of Du Pont, and, therefore, Evans was barred from suing Perkins at common law under Virginia's fellow statutory employee doctrine.

In addition to recognizing that statutory employers of an injured employee are shielded by the VWCA from common law actions

12

brought by the injured employee, Virginia courts have recognized that "fellow statutory employees" of an injured employee are also shielded by the VWCA from the injured employee's common law actions. <u>See</u> <u>Evans</u>, 387 S.E.2d at 779; <u>Smith</u>, 351 S.E.2d at 17; <u>Anderson</u>, 110 S.E.2d at 400-01. Pursuant to Virginia's "fellow statutory employee doctrine," an injured employee of an owner's contractor may not proceed in an action at law against another contractor of the owner or against the other contractor's employees, if the two contractors are engaged in part of the trade, business or occupation of the owner. <u>See, e.g.</u>, <u>Evans</u>, 387 S.E.2d at 779. This doctrine is consistent with the purpose of the VWCA, which is to bring within the canopy of the Act all persons engaged in any work that is part of the owner's trade, business or occupation. <u>See Cinnamon</u>, 384 S.E.2d at 619 n.1.

One of the first cases in which Virginia's highest court applied the "fellow statutory employee doctrine" was <u>Anderson</u>. In <u>Anderson</u>, the owner conducted its business of constructing a turnpike through various independent contractors. <u>See</u> 110 S.E.2d at 398. An employee of one of the owner's independent contractors, an engineering firm, was injured in the performance of his duties. <u>See id.</u> The injured employee sued another independent contractor of the owner, a construction company, alleging that he had been injured as a result of the construction company's employees' negligence in violation of Virginia common law. <u>See id.</u> The trial court dismissed the injured employee's action for lack of jurisdiction because the matter was within the exclusive jurisdiction of the workers' compensation commission. <u>See id.</u> at 397. The Supreme Court of Appeals of Virginia determined that both independent contractors -- the engineering firm and the construction company -- were engaged in the owner's business of constructing a turnpike. <u>See id.</u> at 400. Therefore, the Supreme Court of Appeals of Virginia concluded that the employees of the engineering firm and the employees of the construction company were fellow statutory employees of the owner. <u>See id.</u> Accordingly, the Supreme Court of Appeals of Virginia held that the injured employee of the engineering firm was barred by the VWCA from suing the construction company under common law for injuries sustained while both contractors were performing the owner's work. <u>See id.</u> at 400-01.

We conclude <u>Anderson</u> controls the instant case. Under <u>Anderson</u>, in order to determine whether Evans may proceed with his Virginia

13

common law action against Perkins for the injuries he sustained during the March 28 accident at the DCI plant, we must decide whether Evans and Perkins were Du Pont's statutory employees at the time of the accident. As discussed above in Section III of this opinion, Evans was a statutory employee of Du Pont at the time of the accident. Therefore, the question before us is whether Perkins was a statutory employee of Du Pont at the time of the accident. Evans contends that Perkins was not a statutory employee of Du Pont because Perkins was merely supplying a machine and its owner's manual, and, therefore, was not performing part of Du Pont's business at the time of the accident. Perkins contends, and we agree that, Perkins was more than a mere supplier of a machine and its owner's manual, and, as such, was performing a subcontracted fraction of Du Pont's business of processing TYVEK at the time of the accident.

As we recognized in Turnage, a contractor that manufactures a product to meet the requirements of a specific project of the owner may be engaged in the business of the owner so as to fall within the protection of the VWCA and be immune from common law liability. See 336 F.2d at 842-43. In Turnage, the owner, a construction company, acted as general contractor and conducted its business of constructing an apartment building through various independent subcontractors, including a steel company and a cement finisher. See id. at 838. After an employee of the cement finisher sustained injuries during the construction of the owner's apartment building, the employee sued the steel company, alleging that his injuries were the result of the steel company's negligence. See id. at 838-39. The district court determined, and we affirmed on appeal, that the cement finisher and the steel company were engaged in the owner's business, and, therefore, were fellow statutory employees of the owner. See id. at 839. Specifically, on appeal the question before us was whether the steel company was engaged in the owner's business. See id. at 842. We concluded that under the VWCA the steel company was immune from the injured employee's common law action under the fellow statutory employee doctrine because the steel company was more than a mere supplier of a product and was, like the cement finisher, actually engaged in the owner's business:

> [T]he work of [the steel company], like that of other contractors engaged in the project, was closely related to and

14

dependent upon the work of the other trades and when changes in the steel were required, either by modifications in design or errors of other trades, it went to the job site and made them. By performing such work which was the responsibility of the [owner], by giving advice relative to various construction problems and by working generally under [the owner's] supervision, [the steel company] was conducting the business of [the owner]. . . .[The steel company] was not a stranger to the business; it is within the coverage of the Act and immune from suit at common law.

Id. at 843.

The record reflects that Perkins, like the contractor in Turnage, was more than a mere supplier and was performing part of the owner's main business concern. Du Pont contracted with Perkins for Perkins to perform fractions of Du Pont's main business concern of processing TYVEK. Specifically, Du Pont contracted with Perkins for Perkins to design a machine that would allow Du Pont to produce market-specific TYVEK products and for Perkins to develop a roll changing procedure for the new machine in accordance with Du Pont's specifications. Additionally, Du Pont contracted with Perkins for Perkins to demonstrate the Roll Changing Procedure on Du Pont's TCP machines to Du Pont and DCI's satisfaction and to provide the auxiliary safety equipment necessary for the roll changing demonstration and all further roll changes. The record reflects that Perkins, in fulfilling these contractual obligations, was more than a mere supplier of a machine and an owner's manual and was in fact performing fractions of Du Pont's main business concern of processing market-specific TYVEK.

Unlike a mere supplier, Perkins did not simply fill an order for a product and ship it for delivery. On the contrary, the work of Perkins was closely related and dependent upon the work of the other contractors involved in the processing of Du Pont's TYVEK. By developing a machine and an operating procedure specific to Du Pont's business goal of processing market-specific TYVEK, by preparing a detailed operating procedure specific to Du Pont's TCP machines and in accordance with Du Pont's specifications, by demonstrating Du Pont's Roll Changing Procedure at the job site, by working with

15

Du Pont and the other contractors to modify the procedure to Du Pont's satisfaction, by supplying the auxiliary safety equipment necessary for the roll changing demonstration and all future roll changes, including the March 28 roll change, and by visiting the job site on occasion, including on March 28, 1996, to repair equipment, Perkins was conducting the business of Du Pont.

Having concluded that Perkins, in fulfilling its contractual obligations under its contract with Du Pont, was performing part of Du Pont's business, we must now address whether Perkins was performing Du Pont's business at the time of the accident. Evans contends that Perkins' obligations under its contract with Du Pont had been completed at the time of the March 28, 1996 accident, and, therefore, Perkins may not claim statutory employee status and shield itself from liability for claims stemming from the injuries he sustained on March 28, 1996. Evans' claim is belied by the record.

Evans does not dispute that Du Pont contracted with Perkins for it to design Du Pont's TCP machine, develop Du Pont's TCP Roll Changing Procedure, demonstrate Du Pont's TCP Roll Changing Procedure on Du Pont's machines at the DCI plant, and provide the auxiliary safety equipment necessary for the TCP roll changes. In fact, Evans' averments in his complaint are that he was injured because Perkins, in completing such obligations, was negligent and in breach of its warranties. In attempting to circumvent the shield of the VWCA so that he may bring his claims, Evans simply alleges that Perkins had completed its contractual obligations as of March 28, 1996, and, therefore, was not a statutory employee of Du Pont at the time of his injuries. Evans' conclusory allegation, however, fails to rebut the evidence in the record that at the time of the accident Perkins' obligations under its contract with Du Pont had not been completed. The record reflects that as of March 28, 1996, Perkins continued to have contractual obligations to Du Pont. As noted above, Perkins contracted with M&R for an M&R employee to perform work for Perkins on Du Pont's TCP machines at DCI on March 28, 1996, prior to the roll change on that day. Based upon this unrebutted evidence, Perkins was engaged in a fraction of Du Pont's business of processing TYVEK as of March 28, 1996, and, therefore, was, like Evans, a statutory employee of Du Pont.

16

Our conclusion that Perkins was a statutory employee of Du Pont comports with the purpose of the VWCA, which is "'to limit recovery of all persons engaged in the business under consideration to compensation under the act, and to deny an injured person the right of recovery against any person unless he be a stranger to the business.'" Turnage, 336 F.2d at 843 (quoting Doane v. E.I. du Pont de Nemours & Co., 209 F.2d 921, 926 (4th Cir. 1954)). Clearly, Perkins was not a stranger to the March 28 roll change. On March 28, 1996, prior to the roll change, Perkins contracted with M&R for an M&R employee to perform work for Perkins on Du Pont's TCP machines at DCI. During the March 28 roll change, the M&R crew changed the TCP rolls using a modified version of Du Pont's TCP Roll Changing Procedure that Perkins had developed. The M&R crew changing the rolls on March 28, 1996, was the same crew that Perkins had trained at DCI on March 11-13, 1996, to change Du Pont's TCP rolls using Du Pont's TCP Roll Changing Procedure that Perkins had developed.

In sum, because we conclude that Perkins and Evans were fellow statutory employees of Du Pont as of March 28, 1996, we agree with the district court's conclusion that Evans' sole remedy against Perkins is pursuant to the VWCA. Accordingly, we affirm the district court's dismissal of Evans' Virginia common law action against Perkins for lack of subject matter jurisdiction.

V

For the reasons stated above, we affirm the district court's dismissal of Evans' Virginia common law action against Du Pont, DCI, and Perkins for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), because Evans' sole remedy is pursuant to the VWCA.

AFFIRMED

MOON, District Judge, concurring in part, dissenting in part.

I concur in the majority opinion in so far as it holds that Evans was the statutory employee of Du Pont and Diversified Converters, Inc. (DCI), but I do not to agree that Evans should be barred from suing Perkins at common law under Virginia's fellow statutory employee doctrine.

17

I do not believe that under any test Perkins can be found to be the statutory employee of Du Pont because both tests require that the statutory employee be engaged in the "trade, business or occupation" of the employer (Du Pont). See Cinnamon v. IBM Corp., 384 S.E.2d 618, 621 (Va. 1989). Additionally, the record does not support a finding that Perkins was performing "a subcontracted-fraction of Du Pont's `main business concern'**1** of processing TYVEK," but instead was an independent contractor engaged to perform a task that was not part of the normal business of Du Pont, i.e. manufacturing a machine and performing services incidental to its installation so that Du Pont could process TYVEK. Perkins was required to demonstrate that the machine it designed and constructed to Du Pont's specifications worked, but was not required to engage in the production of the product.

To determine whether a subcontractor is a fellow statutory employee of another subcontractor, the court must determine if both parties are engaged in the trade, business or occupation of the owner. Shell Oil Co. v. Leftwich, 187 S.E.2d 162 (Va. 1972); Nichols v. VVKR, Inc., 403 S.E.2d 698, 701 (Va. 1991); Wilton, Inc. v. Gibson, 471 S.E.2d 832 (Va. App. 1996). In this case, the court must examine whether Perkins' activities necessarily constitute the trade, business, or occupation of Du Pont.

Du Pont contracted with Perkins (1) to develop a machine to allow Du Pont to produce market-specific TYVEK products, (2) to develop an operating procedure for the new machine, (3) to demonstrate the use of the machine applying the operating procedures, and (4) to supply the auxiliary safety equipment for the machine. Inherent in Perkins' job to supply the machine and operating manual is the requirement to ensure that the machine works properly for the purpose for which it is intended.

_____

**1** The term "main business concern," as used in the only case in which the words appear in that order, is synonymous with"trade, business or occupation." In Horn v. Smith, the court stated that because both independent contractors were "engaged in the trade, business, or occupation of [the owner]," their work "was unquestionably a fraction of this main business concern." 351 S.E.2d 14, 17-18 (Va. 1986)(emphasis supplied).

18

Therefore, Perkins contracted with M & R Construction to demonstrate the roll changes in Du Pont's TCP machines on March 11-13. After that demonstration, DCI, under a separate contract with Du Pont, was to make the roll changes for Du Pont's regular production. Perkins developed the machine and procedures for operating it, but it was to withdraw after its contractual obligations were completed. DCI would then be the only subcontractor directly involved in the production of TYVEK.

While Perkins also provided DCI with the safety equipment to make the roll changes, this was just another facet of supplying a machine to be used in Du Pont's manufacturing process. Perkins was not actively involved in the manufacturing of TYVEK.

The Virginia courts have made it clear that when examining the relationship between owners/general contractors and subcontractors in the context of the VWCA, the Shell Oil test is only a guide that may not always prove helpful because not all activities which are useful to an owner are necessarily part of that owner's trade, business or occupation. Cinnamon, 384 S.E.2d at 618; see also Wilton, 471 S.E.2d at 834 (stating that not all "absolutely indispensable" activities fall within VWCA "since, after all, this could be said of practically any repair, construction or transportation service"). (Therefore, "analysis of a project owner's trade, business, and occupation begins with identification of the nature of the particular owner... [I]f the owner is a private entity, [the court must focus] on whether the `the activity is, in that business, normally carried on through employees rather than independent contractors.'" Nichols, 403 S.E.2d at 701 (quoting Shell Oil Co. v. Leftwich, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972)). To determine whether work is "normally carried on through employees," the court may examine the frequency and regularity of an independent contractor's performance, Bassett Furniture Industries, Inc. v. McReynolds, 224 S.E.2d 323, 326 (Va. 1976), as well as the extent to which the activities carried on by the independent contractor are incorporated into the owner's normal business operations. Yancey v. JTE Constructors, Inc., 471 S.E.2d 473, 474 (Va. 1996).

Examples of this premise are evident in a number of cases cited in the majority opinion. See Anderson v. Thorington Construction Co., 110 S.E.2d 386 (Va. 1959); Evans v. Hook 387 S.E.2d 777 (Va.

19

1990); Bowling v. Wellmore Construction Co., 114 F.3d 458 (4th Cir. 1997); Floyd v. Mitchell, 123 S.E.2d 369 (Va. 1952). In all of these cases, a primary business purpose of the owner was undertaken by a subcontractor at the time of the accident. In each, the subcontractor was contracted with to perform part of the normal business of the owner, or was performing an integral part of the ongoing business of the owner, such as was Mitchell and Powell Trucking Company in Floyd v. Mitchell.

These cases are to be distinguished from Cinnamon, 384 S.E.2d 618, where the owner, IBM, initiated a construction project in order to conduct its core business and was held not to be a statutory employer. In my opinion, IBM's case for Cinnamon being its statutory employee is stronger than Perkins' case that it was the statutory employee of Du Pont. Although IBM had a construction division, the court held that IBM could not claim to be the statutory employer of Cinnamon, a subcontractor's employee who was injured while working on the IBM construction site. The court reasoned that nothing in the record showed that the construction work being performed by Cinnamon had ever been part of IBM's core "trade, business or occupation."

I believe that the reasoning in the case of Bassett Furniture Industries, Inc. v. McReynolds, 224 S.E.2d 323 (Va. 1976) is the closest authority to the set of facts in this case. In Bassett, a large furniture manufacturer engaged an independent contractor to install a conveyor system in its Virginia plant. Bassett Furniture hired Industrial Air, Inc. to do the work, including the design and manufacture of the system. While Bassett Furniture employed engineers who helped Industrial with the initial arrangement of the conveyor system and performed the electrical work, Bassett did not have control over Industrial's employees. When one of Industrial's employees, McReynolds, was injured after falling through a hole in a floor which had been cut by Bassett to accommodate the conveyor system, the court held that Bassett was not McReynolds' statutory employer. The court noted that even though Bassett had the capacity to build new conveyors, its core business was to manufacture furniture, not build conveyors.

Likewise, there is nothing in the record here to indicate that Du Pont develops and tests its own machines used in its manufactur-

20

ing processes. Only if the work performed by the independent contractor or subcontractor is directly connected to the owner's core business purpose can the subcontractor then be classified as a statutory employee. Wilton, 471 S.E.2d at 834; see also Nichols, 403 S.E.2d at 701. Du Pont's core business is to manufacture materials such as TYVEK, not to develop the machines which are used to carry out this purpose. Consequently, Du Pont would not be a statutory employer of Perkins because Perkins was not performing a part of the normal business of Du Pont. Thus, Perkins should not be considered a fellow statutory employee along with Evans.

Consequently, I must respectfully dissent from Part IV of the majority opinion.

21