### Richmond

DORIS L. COOKE

V.

SKYLINE SWANNANOA, INCORPORATED

September 9, 1983.

Record No. 801928.

Present: All the Justices.

*Charles P. Ajemian (Ajemian & McGratty,* on briefs), for appellant.

*Stephen D. Busch (Jay T. Swett; McGuire, Woods & Battle,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

In this case, the issue is whether the appellant, Doris L. Cooke (Cooke), was the statutory employee of Skyline Swannanoa, Incorporated (Skyline), an entity against which Cooke filed a common law negligence action. If Cooke was the statutory employee of Skyline, then her remedies are limited to those provided by the Workmen's Compensation Act. Code § 65.1-40.

The trial court held that Cooke was Skyline's statutory employee because at the time of Cooke's injury her direct employer was engaged in work that was part of Skyline's trade, business, or occupation. As a result of its holding, the trial court sustained Skyline's Special Plea that Cooke's exclusive remedy was under the Workmen's Compensation Act. We think the trial court was correct. Therefore, we will affirm its decision.

Code § 65.1-29 controls the disposition of this case. That statutory provision reads in pertinent part as follows:

When any person [the owner] . . . undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person [the subcon-

tractor] . . . for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

■ The issue whether a person is a statutory employee presents a mixed question of law and fact which must be resolved in light of the facts and circumstances of each case. *Bassett Furniture* v. *McReynolds,* 216 Va. 897, 224 S.E.2d 323 (1976). Here, the facts fall squarely within the sweep of the statute.

Cooke's direct employer was Aberdeen Barn-Afton, Inc. (Aberdeen Barn), a restaurant located at the Holiday Inn on Afton Mountain in Nelson County, Virginia. She was injured on the premises of the restaurant. She received workmen's compensation benefits from Aberdeen Barn's insurer.

At the time of Cooke's injury, Skyline had a license, executed November 15, 1965, to operate a Holiday Inn on Afton Mountain (the "License Agreement"). It describes the Holiday Inn system as one that includes providing "lodging, food and other accommodations." Further, it provides that a substantial and material violation of any of its terms gives Holiday Inn the right to terminate the license.

In an Addendum to the License Agreement (Addendum), Skyline and Holiday Inn refer specifically to the operation of a restaurant at the Afton Mountain facility. There, Skyline, the Licensee, agreed in pertinent part as follows:

Licensee agrees that *whether it operates the restaurant or whether it is leased or sublet to others, Licensee agrees to be responsible for the restaurant* in the proposed Holiday Inn, to maintain accommodations at an early hour for departure at breakfast and also to remain open a reasonably late hour for late arrivals in the evening. *Licensee further agrees* to be responsible for the restaurant to furnish room service to all rooms of the Holiday Inn, to display Holiday Inn advertising material exclusively, such as Directories, place mats, napkins, etc., and *to conduct the entire operation of the restaurant compatible with and to the best interest of the Holiday Inn System.*

(Emphasis added.) The License Agreement and the Addendum make clear that the provision of both food *and* lodging is fundamental to the operation of a Holiday Inn.

Subsequent to executing the License Agreement, Skyline executed a second agreement (the "Lease Agreement") with Angus Barn, Afton, Inc., the predecessor in interest to the present Aberdeen Barn-Afton, Inc. In that agreement, Skyline leased to Angus Barn the "existing restaurant area . . . as set forth on the commercial building plan in the plans and specifications for a Holiday Inn located at Afton, Virginia." The Skyline/Angus Barn Lease Agreement makes several specific references to the Skyline/Holiday Inn License Agreement. Significantly, in the Lease Agreement, Angus Barn agreed to be bound by certain parts of the License Agreement.

> The Lessee hereby agrees that it will observe all the covenants and terms of the said License Agreement insofar as they relate to the operation of the restaurant within the Holiday Inn. *The Lessee undertakes and agrees to operate the restaurant so as to comply fully with the rules, regulations and requirements of the Holiday Inn International System Rules of Operations as in force from time to time.*

(Emphasis added.) Angus Barn also agreed to submit to inspections by Holiday Inn personnel. Finally, Angus Barn agreed that its uncured failure to secure a passing grade on a Holiday Inn inspection would constitute a breach of the Lease Agreement.

Taken together, the License Agreement, the Addendum, and the Lease Agreement by clear and unambiguous language establish that Skyline was a Holiday Inn licensee; that to maintain that status, Skyline was required to provide the Holiday Inn system of food and lodging; that even if Skyline chose not to operate a restaurant itself it would remain responsible for the operation of the restaurant; and that Angus Barn agreed to operate a restaurant at the Afton Mountain Holiday Inn and to abide by Holiday Inn's requirements concerning its operation. In short, the pertinent documents show that Angus Barn stepped into Skyline's shoes when it agreed to operate a restaurant at the Afton Mountain Holiday Inn. Skyline was in the business of running a Holiday Inn and Angus Barn merely agreed to perform part of Skyline's responsibilities.

Cooke, on brief and in argument, essentially admits that Skyline is in the business of providing food and lodging as a Holiday Inn licensee. On brief, Cooke wrote as follows: "Having a restaurant was an indispensable part of Skyline's right to use the name 'Holiday Inn.'" In argument Cooke's counsel described the Holiday Inn system as follows: "A system to provide food and lodging and other accommodations." Counsel went on to admit that if there were no restaurant at the Afton Mountain facility then it would not be a Holiday Inn. In the same vein, Cooke, in answer to Request for Admissions, admitted that "there were 68 Holiday Inns in Virginia on August 2, 1976 and all had restaurants."

 The trial court correctly concluded that Cooke was Skyline's statutory employee so that Code § 65.1-29 operates to impose workmen's compensation liability upon Skyline. Consequently, Cooke, who was injured while working for Angus Barn and who received workmen's compensation benefits from Angus Barn's insurer, has no common law right of action against Skyline. Code § 65.1-40.

Cooke argues that our decisions in *Bassett Furniture, supra,* and *Shell Oil Co.* v. *Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972), require a result different from the one reached by the trial court. In support of her position, she quotes the following test, formulated by Professor Larson and adopted by this Court in *Bassett Furniture* and *Shell Oil Co.;* the test concerns how to determine whether the work of an independent contractor is part of the owner's trade or business:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (*except in cases where the work is obviously a subcontracted fraction of a main contract*) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.

1C A. Larson, *The Law of Workmen's Compensation* § 49.12 at 9-53 (1952) (emphasis added). Cooke focuses on the phrase "normally carried on through employees." She submits that Skyline has never, through its own employees, engaged in the restaurant

business. Therefore, according to Cooke, the restaurant at the Holiday Inn Afton cannot be a part of Skyline's trade, business, or occupation.

Cooke's contention is untenable. She arrives at her position by ignoring a key element of the test she quotes from *Bassett Furniture* and *Shell Oil Co.* In the foregoing quotation, we have italicized the pertinent language. In this case the exception controls. Here, the restaurant work Angus Barn contracted to undertake is "obviously a subcontracted fraction" of Skyline's main agreement with Holiday Inn to provide a system of food, lodging, and other accommodations. Thus, in this case, there is no need to consider the second part of the test, which comes into play only where an obvious subcontract is not first found. *Shell Oil Co.* v. *Leftwich* and the other cases cited by Cooke are inapposite.

In light of the foregoing we will affirm the decision of the trial court.

*Affirmed.*