COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Fitzpatrick and Overton
Argued at Salem, Virginia


F. RICHARD WILTON, JR., INC.

v.        Record No. 2314-95-3              OPINION BY
                                    JUDGE JOHANNA L. FITZPATRICK
ROGER ALLEN GIBSON, GARY C.              JUNE 18, 1996
 CONLEY AND UNINSURED
 EMPLOYERS' FUND


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Rodney A. Satterwhite (Pamela L. Ventura;
          McGuire, Woods, Battle & Boothe, on briefs),
          for appellant.

          Rhonda Overstreet (Gary L. Lumsden; Lumsden &
          Overstreet, on brief), for appellee Roger
          Allen Gibson.

          Christopher D. Eib, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General; Richard L. Walton, Jr., Senior
          Assistant Attorney General; John J. Beall,
          Jr., Senior Assistant Attorney General, on
          brief), for appellee Uninsured Employers'
          Fund.

          No brief or argument for appellee Gary C.
          Conley.



     In this workers' compensation case, F. Richard Wilton, Jr.,

Inc. (Wilton) appeals the commission's decision awarding benefits

to Roger Allen Gibson (claimant).  Wilton argues that the

commission erred in finding that Wilton was claimant's statutory

employer under Code § 65.2-302.  Finding no error, we affirm the

commission.

     Wilton, a drywall contractor, handles both interior and

exterior drywall work.  In March 1994, Century Construction

Company (Century) hired Wilton as a subcontractor to install drivit[1] on the exterior of a Richmond restaurant. Although Wilton's business is ninety-five percent interior drywall installation, the company routinely accepts drivit installation contracts and subcontracts the drivit installation included in its projects. No Wilton employees install drivit full time, and Wilton's drivit installation constitutes only two to three percent of its business. Wilton subcontracted the drivit installation to Conley Construction Company (Conley).

Claimant worked for Conley and was assigned to the drivit installation job. Claimant provided his own hand tools, and Wilton's supervisor, William Sirk, insured that the Conley workers had the materials and instruments needed to complete the job. While installing drivit, claimant fell off scaffolding and injured his foot.

Because Conley was uninsured, claimant filed a claim for benefits against Wilton as a statutory employer. The commission found that "the activity of installing 'drivit' is not so distinct or separate as to be outside the overall nature of Wilton's trade" and awarded benefits to claimant.

On appeal, Wilton argues that the commission erred in holding it liable as a statutory employer under Code § 65.2-302. Wilton asserts that drivit installation is a different trade,

---

[1]Drivit is a new synthetic plaster, and installing drivit involves a different process than regular drywall work.

business, or occupation than standard drywall work and that the commission applied the wrong analysis in awarding benefits to claimant.

Code § 65.2-302[2] provides as follows:

> A. When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.
>
> B. When any person (referred to in this section as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if that worker had been immediately employed by him.
>
> C. When the subcontractor in turn contracts with still another person (also referred to as "subcontractor") for the performance or execution by or under such last subcontractor of the whole or any part of the work undertaken by the first subcontractor, then the liability of the owner or contractor shall be the same as the liability imposed by subsections A and B of this section.

---

[2] Code §§ 65.1-29, 65.1-30, and 65.1-31 were recodified in 1991 as Code § 65.2-302.

The purpose of Code § 65.2-302 is to "'protect the employees of subcontractors who are not financially responsible and to prevent employers from relieving themselves of liability (for compensation) by doing through independent contractors what they would otherwise do through direct employees.'" Bassett Furn. Indus., Inc. v. McReynolds, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976) (quoting Sears, Roebuck & Co. v. Wallace, 172 F.2d 802, 810 (4th Cir. 1949)). "'The issue whether a person is a statutory employee presents a mixed question of law and fact . . . .'" Cinnamon v. International Business Machines Corp., 238 Va. 471, 474, 384 S.E.2d 618, 619 (1989) (quoting Cooke v. Skyline Swannanoa, Inc., 226 Va. 154, 156, 307 S.E.2d 246, 247 (1983)).

The Supreme Court of Virginia has used the analysis set forth in Shell Oil Co. v. Leftwich, 212 Va. 715, 187 S.E.2d 162 (1972), in determining statutory employer status:

> "[T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors."

Cinnamon, 238 Va. at 475, 384 S.E.2d at 620 (quoting Shell Oil, 212 Va. at 722, 187 S.E.2d at 167).

4

In *Cinnamon*, the Supreme Court discussed the two prongs of the *Shell Oil* test--the "normal-work test" and the "subcontracted-fraction test."  238 Va. at 476, 384 S.E.2d at 620.  The Supreme Court explained that the normal-work prong is used in determining statutory employer status under Code § 65.2-302(A) (former Code § 65.1-29) and "relates to an owner who engages an independent contractor to perform certain work." *Id.*  The Supreme Court also explained that the subcontracted-fraction test is used to analyze statutory employer status under Code § 65.2-302(B) (former Code § 65.1-30) and defined the test as follows:

> In the context of the construction business, [the subcontracted-fraction prong] relates to a general contractor, the party obligated by the main contract with the owner to complete the whole project.  If the work out of which the accident arose was, in the language of *Shell Oil*, "obviously a subcontracted fraction of [that] contract" and, in the language of the statute, "not a part of the trade, business or occupation of" the owner, the general contractor who engaged the subcontractor to perform that fraction is the statutory employer of the injured worker, whether directly employed by the primary subcontractor or by a secondary subcontractor.

*Id.*  "The subcontractor similarly becomes the statutory employer of a sub-subcontractor's employees.  Thus, employees of an uninsured sub-subcontractor may look to the subcontractor, and to the general contractor, for coverage, although recovery is not permitted from both."  *States Roofing Corp. v. Bush Constr. Corp.*, 15 Va. App. 613, 616-17, 426 S.E.2d 124, 126 (1993)

5

(citation omitted).

Wilton incorrectly asserts that the commission should have used the normal-work test in analyzing whether claimant was its statutory employee. In this case, Wilton was not an owner engaging an independent contractor to perform work, and the normal-work test was inapplicable. Instead, Wilton was a subcontractor hired by the general contractor, Century. The main contract between Century and the restaurant owner required Century to remodel the restaurant. Century subcontracted the drivit installation to Wilton; Wilton in turn subcontracted the work to Conley, claimant's employer. The drivit installation constituted one hundred percent of Wilton's obligations under the contract with Century. Because of the general contractor/subcontractor/sub-subcontractor relationship, the appropriate test was the subcontracted-fraction test.

Although the commission did not specifically analyze Wilton's status using the subcontracted-fraction test, the commission did not err in requiring Wilton to pay benefits to claimant. The drivit installation was clearly a subcontracted fraction of the main remodeling contract and not part of the trade, business, or occupation of the owner, whose business was operating a restaurant. Thus, Wilton was claimant's statutory employer and liable for benefits under Code § 65.2-302(B).

Accordingly, the decision of the commission is affirmed.

<u>Affirmed</u>.

6