MOON, District Judge,
concurring in part, dissenting in part.
I concur in the majority opinion in so far as it holds that Evans was the statutory employee of Du Pont and Diversified Converters, Inc. (DCI), but I do not to agree that Evans should be barred from suing Perkins at common law under Virginia’s fellow statutory employee doctrine.
I do not believe that under any test Perkins can be found to be the statutory employee of Du Pont because both tests require that the statutory employee be engaged in the “trade, business or occupation” of the employer (Du Pont). See Cinnamon v. IBM Corp., 384 S.E.2d 618, 621 (Va.1989). Additionally, the record does not support a finding that Perkins was performing “a subcon-traeted-fraction of Du Pont’s ‘main business concern’[1] of processing TYVEK,” but instead was an independent contractor engaged to perform a task that was not part of the normal business of Du Pont, i.e. manufacturing a machine and performing services incidental to its installation so that Du Pont could process TYVEK. Perkins was required to demonstrate that the machine it designed and constructed to Du Pont’s specifications worked, but was not required to engage in the production of the product.
To determine whether a subcontractor is a fellow statutory employee of another subcontractor, the court must determine if both parties are engaged in the trade, business or occupation of the owner. Shell Oil Co. v. Leftwich, 212 Va. 715, 187 S.E.2d 162 (Va.1972); Nichols v. VVKR, Inc., 241 Va. 516, 403 S.E.2d 698, 701 (Va.1991); Wilton, Inc. v. Gibson, 471 S.E.2d 832 (Va.App.1996). In this case, the court must examine whether Perkins’ activities ■ necessarily constitute the trade, business, or occupation of Du Pont.
Du Pont contracted with Perkins (1) to develop a machine to allow Du Pont to produce market-specific TYVEK products, (2) to develop an operating procedure for the new machine, (3) to demonstrate the use of the machine applying the operating procedures, and (4) to supply the auxiliary safety equipment for the machine. Inherent in Perkins’ job to supply the machine and operating manual is the requirement to ensure that the machine works properly for the purpose for which it is intended.
Therefore, Perkins contracted with M & R Construction to demonstrate the roll changes in Du Pont’s TCP machines on March 11-13. After that demonstration, DCI, under a separate contract with Du Pont, was to make the roll changes for Du Pont’s regular production. Perkins developed the machine and procedures for operating it, but it was to withdraw after its contractual obligations were completed. DCI would then be the only subcontractor directly involved in the production of TYVEK.
While Perkins also provided DCI with the safety equipment to make the roll changes, this was just another facet of supplying a machine to be used in Du Pont’s manufacturing process. Perkins was not actively involved in the manufacturing of TYVEK.
The Virginia courts have made it clear that when examining the relationship between owners/general contractors and subcontractors in the context of the VWCA, the Shell Oil test is only a guide that may not always prove helpful because not all activities which are useful to an owner are necessarily part of that owner’s trade, business or occupation. Cinnamon, 384 S.E.2d at 618; see also Wilton, 471 S.E.2d at 834 (stating that not all “absolutely indispensable” activities fall within VWCA “since, after all, this could be said *654 of practically any repair, construction or transportation service”). (Therefore, “analysis of a project owner’s trade, business, and occupation begins with identification of the nature of the particular owner ... [I]f the owner is a private entity, [the court must focus] on whether the ‘the activity is, in that business, normally carried on through employees rather than independent contractors.’ ” Nichols, 403 S.E.2d at 701 (quoting Shell Oil Co. v. Leftwich, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972))). To determine whether work is “normally carried on through employees,” the court may examine the frequency and regularity of an independent contractor’s performance, Bassett Furniture Industries, Inc. v. McReynolds, 216 Va. 897, 224 S.E.2d 323, 326 (Va.1976), as well as the extent to which the activities carried on by the independent contractor are incorporated into the owner’s normal business operations. Yancey v. JTE Constructors, Inc., 252 Va. 42, 471 S.E.2d 473, 474 (1996).
Examples of this premise are evident in a number of cases cited in the majority opinion. See Anderson v. Thorington Construction Co., 201 Va. 266, 110 S.E.2d 396 (1959); Evans v. Hook 239 Va. 127, 387 S.E.2d 777 (Va.1990); Bowling v. Wellmore Coal Corp., 114 F.3d 458 (4th Cir.1997); Floyd v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962). In all of these cases, a primary business purpose of the owner was undertaken by a subcontractor at the time of the accident. In each, the subcontractor was contracted with to perform part of the normal business of the owner, or was performing an integral part of the ongoing business of the owner, such as was Mitchell and Powell Trucking Company in Floyd v. Mitchell.
These cases are to be distinguished from Cinnamon, 384 S.E.2d 618, where the owner, IBM, initiated a construction project in order to conduct its core business and was held not to be a statutory employer. In my opinion, IBM’s case for Cinnamon being its statutory employee is stronger than Perkins’ case that it was the statutory employee of Du Pont. Although IBM had a construction division, the court held that IBM could not claim to be the statutory employer of Cinnamon, a subcontractor’s employee who was injured while working on the IBM construction site. The court reasoned that nothing in the record showed that the construction work being performed by Cinnamon had ever been part of IBM’s core “trade, business or occupation.”
I believe that the reasoning in the case of Bassett Furniture Industries, Inc. v. McReynolds, 216 Va. 897, 224 S.E.2d 323 (1976) is the closest authority to the set of facts in this case. In Bassett, a large furniture manufacturer engaged an independent contractor to install a conveyor system in its Virginia plant. Bassett Furniture hired Industrial Air, Inc. to do the work, including the design and manufacture of the system. While Bas-sett Furniture employed engineers who helped Industrial with the initial arrangement of the conveyor system and performed the electrical work, Bassett did not have control over Industrial’s employees. When one of Industrial’s employees, McReynolds, was injured after falling through a hole in a floor which had been cut by Bassett to accommodate the conveyor system, the court held that Bassett was not McReynolds’ statutory employer. The court noted that even though Bassett had the capacity to build new conveyors, its core business was to manufacture furniture, not build conveyors.
Likewise, there is nothing in the record here to indicate that Du Pont develops and tests its own machines used in its manufacturing processes. Only if the work performed by the independent contractor or subcontractor is directly connected to the owner’s core business purpose can the subcontractor then be classified as a statutory employee. Wilton, 471 S.E.2d at 834; see also Nichols, 403 S.E.2d at 701. Du Pont’s core business is to manufacture materials such as TYVEK, not to develop the machines which are used to carry out this purpose. Consequently, Du Pont would not be a statutory employer of Perkins because Perkins was not performing a part of the normal business of Du Pont. Thus, Perkins should not be considered a fellow statutory employee along with Evans.
Consequently, I must respectfully dissent from Part IV of the majority opinion.

. The term "main business concern,” as used in the only case in which the words appear in that order, is synonymous with “trade, business or occupation.” In Smith v. Horn, the court stated that because both independent contractors were "engaged in the trade, business, or occupation of [the owner],” their work "was unquestionably a fraction of this main business concern.” 232 Va. 302, 351 S.E.2d 14, 17-18 (Va.1986) (emphasis supplied).