# COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Russell
Argued by teleconference

UNPUBLISHED

STEVE RAY DIVINO

v.      Record No. 1990-19-1

UNINSURED EMPLOYER'S FUND, CAVALIER
 LAND INC., HARLEYSVILLE INSURANCE
 COMPANY, JAMES McQUITTY, JR., JIMMY
 McQUITTY HARDWOOD FLOORS AND
 MULT. MISC. PROPERTIES ASSOCIATES, LC

<table>
<tr><td>HEALTHSMART CASUALTY CLAIMS SOLUTIONS</td><td>MEMORANDUM OPINION* BY</td></tr>
<tr><td> AND UNINSURED EMPLOYER'S FUND</td><td>JUDGE RANDOLPH A. BEALES</td></tr>
<tr><td></td><td>JULY 14, 2020</td></tr>
</table>

    v.      Record No. 2036-19-1

STEVE RAY DIVINO, CAVALIER LAND INC.,
 HARLEYSVILLE INSURANCE COMPANY,
 JAMES McQUITTY, JR., JIMMY McQUITTY
 HARDWOOD FLOORS AND MULT. MISC.
 PROPERTIES ASSOCIATES, LC

### FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

W. Mark Broadwell (Forbes & Broadwell, on briefs), for Steve Ray Divino.

Esther King (Jessica Hacker Trivizas; McCandlish Holton, PC, on briefs), for HealthSmart Casualty Claims Solutions and Uninsured Employer's Fund.

Adam E. Strauchler (Teumer & Drash, on brief), for Cavalier Land Inc. and Harleysville Insurance Company.

Brian N. Casey (Taylor Walker, P.C., on brief), for Mult. Misc. Properties Associates, LC.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

No brief or argument for James McQuitty, Jr. and Jimmy McQuitty Hardwood Floors.

In this consolidated appeal, claimant Steve Ray Divino contends that the Workers' Compensation Commission ("Commission") erred in denying him benefits for an injury he received while installing laminate flooring. He argues that the Commission erred in finding that his employer was not subject to the Workers' Compensation Act (the "Act") because it had regularly in service less than three employees. Divino also contends that the Commission erred in finding that the owner and the property manager of the building where he was working when he was injured were not his statutory employers under the subcontracted-fraction test of Code § 65.2-302(B). The Uninsured Employer's Fund and HealthSmart Casualty Claims Solutions (collectively, "UEF") also appealed the Commission's decision, and, like Divino, claim that the Commission erred in unanimously finding that the owner and the property manager were not Divino's statutory employers.

## I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the appellees, as we must, because they prevailed before the Commission. See Osborne v. Forner, 36 Va. App. 91, 95 (2001). So viewed, the record before us establishes that on June 22, 2017, Divino was injured while working on a laminate flooring project in the Time Building in Norfolk. The Time Building was owned by Mult. Misc. Properties Associates, LC ("MMPA") and managed by Cavalier Land, Inc. ("Cavalier") pursuant to a verbal contract.

Prior to Divino's injury, Cavalier had entered into a lease agreement on behalf of MMPA with CoreVelo, one of the Time Building's existing tenants. The terms of the lease provided that CoreVelo, which operates a Pilates and cycling studio, would lease both its current space and an adjoining vacant space. Pursuant to an amendment to the lease, MMPA was required to perform certain work on the adjoining space, identified in the lease amendment as the "Landlord's

- 2 -

Work," to make it suitable for CoreVelo's use. Cavalier, acting on behalf of MMPA, hired Jim McQuitty Hardwood Flooring Co. ("McQuitty"), a flooring installation company, to perform the flooring installation required by the lease amendment. Divino, an employee of McQuitty, was injured while performing this work.

Divino submitted a claim for benefits to the Commission. During the proceedings, Divino claimed that McQuitty was liable under the Workers' Compensation Act as his actual employer. He also claimed that MMPA and Cavalier were liable under the Act as his statutory employers. After conducting two hearings, the deputy commissioner denied the claims, finding none of the alleged employers liable under the Act. Upon review, the full Commission affirmed the deputy commissioner's decision, without dissent, and Divino and the UEF timely appealed to this Court.

<u>Jim McQuitty Hardwood Floor Company</u>

Prior to the hearings before the deputy commissioner, the parties stipulated that Divino "was an employee of Jim McQuitty Hardwood Floor Co. and/or Jimmy McQuitty in the sense that McQuitty controlled the means and methods by which the Claimant performed his work, (i.e., he was not an independent contractor)." McQuitty did not have workers' compensation insurance and was not present (or represented) at either of the hearings.

Divino testified that he had worked for McQuitty for approximately thirty years. His job was to "[p]ut down floors, sand and finish floors, and whatever needed to be done." He testified that in 2016, McQuitty had five employees but then the "business changed." He stated that by late 2016, the company no longer had an office, and it had started storing all of its materials in various places – including in Divino's home. Divino testified that in 2017, the company only had two employees in addition to Mr. McQuitty, whom Divino described as "the head man – president."

- 3 -

Divino submitted into evidence the Articles of Incorporation and the Certificate of Incorporation of "Jim McQuitty Hardwood Floor Co." filed with the Virginia State Corporation Commission (SCC). The effective date of the Certificate of Incorporation was August 18, 1997. Divino also submitted into evidence W-2s for 2015 and 2016. Divino stated that, when the accident occurred, he was working twenty to thirty hours a week for McQuitty and was making $13 per hour. That year, unlike prior years, he was not given a W-2. He was paid by cash or check and had no records of his earnings.

The deputy commissioner concluded that Divino failed to prove that McQuitty was an employer subject to the Workers' Compensation Act because Divino did not prove that the company had three or more employees regularly in service. The deputy commissioner stated that "[t]here is no evidence of record to support a conclusion that Employer was still operating as a corporate entity at the time of Claimant's injury in 2017." The deputy commissioner instead found that Mr. McQuitty was a sole proprietor "who regularly employed only two employees at the time of Claimant's injury."

The full Commission affirmed the decision of the deputy commissioner although it noted that the deputy commissioner had erroneously placed the burden on Divino to prove that McQuitty had three or more employees. The Commission explained that once an employee has proven his injury occurred while employed in Virginia, the employer has the burden of producing sufficient evidence that it has less than three employees regularly in service in Virginia. Even though no representative of McQuitty appeared at the hearings, the Commission stated that it was still required to "determine whether a preponderance of the evidence established Jim McQuitty Hardwood Floor Co. was not subject to the Act."

The Commission found that Divino's testimony that McQuitty "typically had three persons, including [Mr.] McQuitty, working in 2017" was undisputed and, therefore, the issue of

- 4 -

whether the company was liable under the Act turned on whether Mr. "McQuitty himself was an employee." The Commission noted that the term "employee" under the Workers' Compensation Act "includes every executive officer elected or appointed in accordance with the charter and bylaws of a corporation. Va. Code § 65.2-101." The Commission also stated that "[s]ole proprietors who elect to be included as an employee under workers' compensation coverage are also considered employees under the Act."

To determine if McQuitty was a corporation or a sole proprietorship, the Commission searched for the company's name on the Virginia SCC's website and found that the company's status was listed as "Purged." In its opinion, the Commission explained that the SCC's website states that when an "entity's status is 'Purged,' then its existence or registration has been canceled, revoked, terminated or withdrawn for a period of more than 5 years and, under Virginia law, the entity is not eligible for reinstatement or restoration." The Commission acknowledged that this evidence was not presented by the parties but noted its ability to take administrative notice of public records prepared by government agencies. Based on this information and the evidence presented, the Commission concluded that when Divino was injured, "McQuitty was acting as a sole proprietor." The Commission also found that there was no evidence that Mr. McQuitty had elected to be treated as an employee, and thus "the preponderating evidence established that Jim McQuitty Hardwood Floor Company only had two employees regularly in service at the time of the accident." Accordingly, the Commission concluded that McQuitty "was not an employer subject to the Act."

### Cavalier Land

Marc Poutasse, the President of Cavalier, testified that Cavalier managed the Time Building, MMPA's other properties, and a number of other commercial and residential buildings.

Poutasse explained that, as the property manager, Cavalier marketed, entered into lease agreements, maintained properties, collected rents, and paid expenses on behalf of MMPA.

For the project on which Divino was injured, Cavalier had negotiated a lease on behalf of MMPA for an existing tenant, CoreVelo, to take over a space in the Time Building adjoining its current space. As part of the terms of the new lease, MMPA agreed to perform some work referred to in the lease as the "Landlord's Work," which included removing walls and ceiling tiles, installing recessed lighting, installing a shower and water heater, slick finishing the plaster ceiling, and installing laminate flooring to match the adjoining unit as closely as possible. Cavalier hired contractors to perform this work on behalf of MMPA, including McQuitty.

Poutasse also testified Cavalier had six employees that helped with preparing units for new tenants and with maintenance requests. He stated that these employees do not do flooring work except for repairing small flooring issues or laying vinyl flooring in small spaces, such as in closets. For this project, he stated that Cavalier employees did not do any of the flooring work although they did some cleaning up on the project site and some hauling off of old flooring.

The deputy commissioner concluded that Cavalier was exempt from statutory employer liability under Code § 65.2-302(D)'s property management exception, and the full Commission affirmed. The full Commission also concluded that "[e]ven if Cavalier Land were not exempt from liability as a property manager, the subcontracted-fraction test [of Code § 65.2-302(B)] would not apply to impose liability in this case." The Commission found that Cavalier "did not contract with the owner, Mult. Misc. Properties, to perform renovations on the [T]ime [B]uilding." Instead, it found that MMPA and the tenant agreed that MMPA "would have the work performed." The Commission also found that MMPA "did not hire a general contractor, but instead directly hired individual contractors to perform different portions of the work" and that "Cavalier Land merely acted as Mult. Misc. Properties' agent in reaching the agreement with

- 6 -

the tenant and in finding and hiring the various contractors, including Jim McQuitty Hardwood Floor Company." Consequently, the Commission found that Cavalier was not liable under the Workers' Compensation Act as Divino's statutory employer.

## MMPA

Vincent Mastracco, one of two owners of MMPA, testified that MMPA was a "passive real estate owner" with no employees. He agreed that MMPA "made money from holding, operating, and developing real property." He also agreed that Cavalier had full authority to select the contractors it wanted to perform the work here and that he had no involvement in the day-to-day running of the buildings that MMPA owned, such as the Time Building.

The full Commission unanimously found that MMPA was not Divino's statutory employer under the subcontracted-fraction test of Code § 65.2-302(B). It found that MMPA was the owner – not a contractor. The Commission made findings of fact that MMPA was "a passive real estate investor," that it had no employees, and that it was "not engaged in the business of flooring installation." Because the Commission concluded that MMPA was not a contractor, it also concluded that McQuitty was not a subcontractor. Therefore, it held that MMPA was not liable under Code § 65.2-302(B).

## II. ANALYSIS

This appeal requires us to determine which, if any, of the purported employers are liable to Divino under the Act. We address each purported employer in turn.

### A. Whether McQuitty is Liable to Divino under the Act

On appeal to this Court, Divino argues that the Commission erred in finding that McQuitty was not subject to the Act because the Commission improperly relieved McQuitty of the burden of proving that it had regularly in service less than three employees. He claims that the Commission improperly "produced evidence *sua sponte*" while McQuitty "produced no

evidence at all." He contends that the Commission deprived him of his right to due process when, without giving the parties an opportunity to respond, "it took administrative notice, *sua sponte*, of 'records' from the Virginia State Corporation Commission and in particular, an 'explanation' from the Virginia State Corporate Commission Clerk's office website regarding the meaning of the term 'purged.'" In addition, Divino argues that the Commission never determined whether, at the time of the accident, McQuitty's "established mode of performing business regularly required less than three or more employees."

This Court is barred from reaching these arguments because they were not preserved below for this Court's review. "The contemporaneous objection rule, embodied in Rule 5A:18 in the Court of Appeals . . . is based on the principle that a litigant has the responsibility to afford [the Commission] the opportunity to consider and correct a perceived error before such error is brought to the appellate court for review." Williams v. Gloucester Sheriff's Dept., 266 Va. 409, 411 (2003) (quoting Reid v. Baumgardner, 217 Va. 769, 773 (1977)); see also Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253 (2011). The rule exists to protect the tribunal below "from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal," to allow the tribunal to "rule intelligently, and to avoid unnecessary reversals and mistrials." Williams, 266 Va. at 411 (quoting Reid v. Boyle, 259 Va. 356, 372 (2000)). Divino's assignments of error stem from the Commission's consultation of the SCC's website. Because that alleged error did not occur until the case was under review by the full Commission, Divino needed to file a motion for reconsideration once the Commission stated in its decision that it was relying on information from the SCC in order to give the full Commission the opportunity to correct the alleged error and also so that Divino could preserve that argument for appeal. See id. at 411-12 (holding that appellant was required to file a motion for reconsideration or rehearing to preserve argument for

appellate review where the basis for the full Commission's decision was not raised, litigated, or considered in the case prior to the full Commission's decision).

Likewise, we cannot consider Divino's contention that the full Commission erred in finding that McQuitty was not subject to the Act when the Commission never determined whether, at the time of the accident, McQuitty's "established mode of performing business regularly required less than three or more employees." The deputy commissioner's opinion does not actually state that McQuitty's established way of performing business regularly involved less than three employees, and Divino did not ask the full Commission to review that issue. Divino also never filed a motion for reconsideration before the full Commission to alert it to the fact that it also had not actually made that determination. As a result, Divino's argument is barred under Rule 5A:18. See Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253 (2011) (holding that appellant failed to preserve an issue for appeal where he did not ask the Commission to review the deputy commissioner's decision on the issue and did not file a motion for reconsideration). Consequently, given that we cannot consider these arguments because they were not preserved for appeal, we affirm the Commission's conclusion that McQuitty was not an employer subject to the Act.

B. Whether Cavalier and MMPA are Divino's Statutory Employers Under the Act

On appeal, both Divino and the UEF argue that the Commission erred when it failed to find that Cavalier and MMPA were Divino's statutory employers. "The Workers' Compensation Act requires an employment relationship of some kind to exist between a claimant and the party allegedly liable for compensation. The usual scenario is a true employer-employee relationship in which the employer controls the employee's jobsite conditions, employment tasks, and working hours." Jeffreys v. Uninsured Employer's Fund, 297 Va. 82, 90 (2019). In addition, an employment relationship is created if a party is the employee's "statutory employer" under

Code § 65.2-302. "The issue whether a person is a statutory employee presents a mixed question of law and fact which must be resolved in light of the facts and circumstances of each case." Cooke v. Skyline Swannanoa, Inc., 226 Va. 154, 156 (1983). "Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." Haley v. Springs Glob. U.S., Inc., 54 Va. App. 607, 612 (2009) (quoting Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134 (1993)). However, "[a]n issue of statutory interpretation is a pure question of law which we review de novo." Booker v. Commonwealth, 60 Va. App. 35, 42 (2012) (quoting Kozmina v. Commonwealth, 281 Va. 347, 349 (2011)). In addition, as the claimant seeking benefits, Divino (and the UEF, which takes the same position) had the burden of proof to show that Cavalier and MMPA were his statutory employers. See Jeffreys, 297 Va. at 97.

Code § 65.2-302 is comprised of four subsections. The first three subsections (A, B, and C) identify relationships where a party may be liable as a statutory employer under the Act. Code § 65.2-302(A)-(C) states:

> A. When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.
>
> B. When any person (referred to in this section as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any worker employed in the work any compensation under this title which he would have been

- 10 -

liable to pay if that worker had been immediately employed by him.

C. When the subcontractor in turn contracts with still another person (also referred to as "subcontractor") for the performance or execution by or under such last subcontractor of the whole or any part of the work undertaken by the first subcontractor, then the liability of the owner or contractor shall be the same as the liability imposed by subsections A and B of this section.

"Subsection A addresses the scenario in which 'any person' contracts with an independent contractor to perform work within the 'trade, business or occupation' of that 'any person.'" Jeffreys, 297 Va. at 91. When examining subsection A, Virginia courts generally apply the "normal-work test," which requires this Court to ask "whether the activity in which the independent contractor engages is '*normally* carried on through employees rather than independent contractors.'" Id. Subsection A would apply, for example, "when a roofing company hires an independent contractor to repair a roof." Id. Because the roofing company hired the independent contractor to perform work that would normally be performed by the roofing company's employees, the roofing company is the statutory employer of the independent contractor's employees.

Unlike the two-tiered scenario of subsection A, "Subsection B involves a three-tiered scenario[.]" Id. The Virginia Supreme Court explained that under subsection B:

A "person" hires a contractor to perform work *outside* the scope of *that* person's "trade, business or occupation." Code § 65.2-302(B). The contractor then hires a subcontractor to do some or all of that work. In this scenario, we have applied what has become known as the subcontracted-fraction test. See Cooke v. Skyline Swannanoa, Inc., 226 Va. 154, 158-59 (1983). An example of this scenario would be where a banker — whose business is banking rather than construction — enters into a contract with a general contractor to build a home, and the general contractor in turn relies on subcontractors (e.g., firms employing framers, brick masons, electricians, etc.) to complete the job. The general contractor, not the banker, becomes the statutory employer

of the subcontractors' employees. See, e.g., Cinnamon v. Int'l Bus. Machs. Corp., 238 Va. 471, 474-79 (1989).

Id. at 91-92 (footnotes omitted) (emphasis in original).

### 1. Cavalier Land

Divino and the UEF ask this Court to apply the subcontracted-fraction test of Code § 65.2-302(B) to find that both MMPA and Cavalier are Divino's statutory employers. Divino argues that Cavalier is "any person (referred to in [Code § 65.2-302(B)] as 'contractor')" who agreed to perform work for "another person" (MMPA) "which work or undertaking is not a part of the trade, business or occupation" of "such other person" (MMPA). He contends that Cavalier then contracted with "any other person (referred to in [Code § 65.2-302(B)] as 'subcontractor')" (McQuitty) "for the execution or performance" of a part of Cavalier's contract with MMPA.

The UEF frames the argument slightly differently. It contends that MMPA is "any person (referred to in [Code § 65.2-302(B)] as 'contractor')" who contracted through the lease to perform the "Landlord's Work" "for another person" (CoreVelo) and that the work is "not a part of the trade, business or occupation" of "such other person" (CoreVelo).[1] The UEF contends that MMPA then entered into a subcontract with Cavalier to perform all of the "Landlord's Work," making Cavalier the "subcontractor" under Code § 65.2-302(B). Then, Cavalier, in turn, subcontracted a fraction of that contract – the flooring work – out to McQuitty, making both MMPA and Cavalier Divino's statutory employers under Code § 65.2-302(B) and (C).

These arguments fail with respect to Cavalier for several reasons. First, these theories require MMPA to have entered into a contract with Cavalier to have Cavalier perform the

---

[1] No party disputes that construction and flooring work were not a part of CoreVelo's trade, business or occupation.

"Landlord's Work." Second, these theories require Cavalier to have entered into a subcontract with McQuitty to perform the flooring work. However, the Commission made findings of fact that no such contracts existed. The Commission found, "Cavalier Land did not contract with the owner, Mult. Misc. Properties, to perform renovations on the [T]ime [B]uilding." The Commission also found, "Cavalier Land merely acted as Mult. Misc. Properties' agent in reaching the agreement with the tenant and in finding and hiring the various contractors, including Jim McQuitty Hardwood Floor Company." These findings of fact are supported by credible evidence in the record. Poutasse testified that Cavalier was a property manager that acted as an agent of MMPA and entered into a contract with McQuitty *on MMPA's behalf*. Because the contract for the flooring work was actually directly between MMPA and McQuitty, and Cavalier itself did not contract to perform the work, we cannot say the Commission erred in concluding that Cavalier was not Divino's statutory employer.[2]

### 2. MMPA

Divino and the UEF argue that MMPA was Divino's statutory employer under Code § 65.2-302(B). They argue that MMPA is "any person" who contracted through the lease to "perform or execute" the "Landlord's Work" "for another person" (CoreVelo) and that the work is "not a part of the trade, business or occupation" of "such other person" (CoreVelo). Divino

---

[2] In addition to finding that Cavalier was not a statutory employer, the Commission also found that Cavalier was not liable to Divino under the Act as a statutory employer because it met the exception for persons engaged in "the business of property management" under Code § 65.2-302(D). Because we agree that Cavalier was not a statutory employer and because that is the best and narrowest grounds for our decision, we do not reach this additional reason given by the Commission. See Levick v. MacDougall, 294 Va. 283, 302 (2017) ("Following the traditional doctrine of judicial restraint, we 'decide cases "on the best and narrowest grounds available."'" (quoting Commonwealth v. White, 293 Va. 411, 419 (2017))).

- 13 -

contends that MMPA then contracted with "any other person" (McQuitty) to perform "any part of the work undertaken by" MMPA (i.e., the flooring).[3]

Divino and the UEF object to the Commission's position that, because MMPA is an "owner" and not a "contractor," MMPA cannot be liable under Code § 65.2-302(B). They argue that it is irrelevant that MMPA was not a contractor because the statute only requires that MMPA be "any person." They also claim that the question of whether construction is MMPA's trade, business, or occupation is not the relevant inquiry under the statute because the only requirement under subsection B is that the work is not the trade, business or occupation of "another person" – i.e., CoreVelo.

In response, MMPA argues that the "subcontracted-fraction test only applies where there is a general contractor hired by an owner to perform a project whose work is not a part of the trade, business or occupation of the owner." MMPA contends that it "is not a general contractor who contracted to do work for an owner and then subcontracted a part or fraction of the work to a subcontractor." Rather, MMPA argues that it is an owner who hired independent contractors to perform work on its own buildings so that it could lease units in those buildings, such as the Time Building, to tenants. Therefore, MMPA contends that it "does not, and did not, contract to perform flooring installation for another person" as Code § 65.2-302(B) requires.

The arguments presented require us to examine the language of Code § 65.2-302.

"The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute."'" Doulgerakis v. Commonwealth, 61 Va. App. 417, 420 (2013) (alteration in original) (quoting City of Virginia Beach v. ESG Enters., 243 Va. 149, 153

---

[3] The UEF continues to assert that MMPA contracted with Cavalier to perform all of the "Landlord's Work" and then Cavalier subcontracted the flooring work out to McQuitty.

- 14 -

(1992)). "Consequently, we 'apply[ ] the plain meaning of the words unless they are ambiguous or [doing so] would lead to an absurd result.'" Eley v. Commonwealth, 70 Va. App. 158, 164 (2019) (alterations in original) (quoting Wright v. Commonwealth, 278 Va. 754, 759 (2009)).

In our review, we are also cognizant that "[t]he Act makes clear . . . that these scenarios [in Code § 65.2-302] are exceptions to the general rule that 'nothing in [the Act] shall be construed to make the employees of any independent contractor the employees of the person or corporation employing or contracting with such independent contractor.'" Jeffreys, 297 Va. at 92 (last alteration in original) (quoting Code § 65.2-101); see also Sykes v. Stone & Webster Eng'g Corp., 186 Va. 116, 123 (1947). "Consequently, 'the mere fact a business owner engages an independent contractor does not make that independent contractor's employees statutory employees of the owner.'" Jeffreys, 297 Va. at 92 (quoting Rodriguez v. Leesburg Business Park, LLC, 287 Va. 187, 194 (2014)).

The Commission's finding that MMPA is not in the business of laying laminate flooring is not – on its own – fatal to appellants' argument. Unlike subsection A, which codifies the normal work test and that specifically requires that the work contracted for be part of "any person['s]" "trade, business or occupation," the subcontracted-fraction test of subsection B does not state this requirement. The Supreme Court of Virginia recently discussed this difference between subsections A and B of Code § 65.2-302 in Jeffreys v. Uninsured Employer's Fund, 297 Va. 82 (2019). The Supreme Court explained, "Depending upon the circumstances, subsections A and B can overlap each other. But they do not necessarily do so. When subsection B applies, the contractor becomes the statutory employer of the subcontractor's employees, and '[t]his is true even if that work is not normally a part of the []contractor's normal work, but is a subcontracted fraction of the main contract.'" Id. at 92 n.4 (quoting 15 Virginia Practice Series, Workers' Compensation § 4:12, at 24 (2018 ed.)). When the subcontracted-fraction test applies,

- 15 -

"we need not reach the question whether the business was normally carried on through employees rather than independent contractors." Smith v. Horn, 232 Va. 302, 308 (1986). See also Cooke, 226 Va. at 159 (stating that the normal work test "comes into play only where an obvious subcontract is not first found").

We also agree with Divino and the UEF that the statute does not apply only to contractors and subcontractors engaged in construction projects, as MMPA seems to suggest. The statute clearly provides that "any person" can be a statutory employer and then simply refers to that person as "contractor" for identification purposes in subsection B of the statute. Moreover, the Virginia Supreme Court has applied the subcontracted-fraction test to situations that involve more than the relationship between a general contractor and a subcontractor that is often seen in construction contracts. See Cooke, 226 Va. at 159 (holding that a hotel licensee's contract with the hotel's restaurant operator was a subcontracted fraction of the licensee's contract with the hotel owner, making that hotel licensee the statutory employer of the restaurant's injured employee). Furthermore, this Court has determined that simply being an "owner" does not *necessarily* relieve a party from being a statutory employer under Code § 65.2-302(B) and the subcontracted-fraction test. See Princess Anne Builders, Inc. v. Faucette, 37 Va. App. 102 (2001) (holding that a construction company that contracted with a buyer to complete construction of a home and lot to then sell and deliver to the buyer was liable to the injured claimant of a tree trimming company because the construction company's contract with the tree trimming company was a subcontracted fraction of the construction company's contract with the buyer).

However, the Commission's findings of fact that MMPA was an owner and a passive real estate investor who did not engage in the business of laminate flooring or construction contracting are very relevant to the determination of whether MMPA was a statutory employer.

In fact, viewed all together and considering MMPA's relationship with CoreVelo, these facts establish that MMPA did not "contract[] to perform or execute any work *for another person*," as Code § 65.2-302(B) requires. (Emphasis added). The agreement in this case to perform the work on part of the Time Building was entered into because CoreVelo was a tenant in MMPA's building, and CoreVelo required MMPA's authorization in order for the work to be performed. Through the parties' lease and lease amendment, the two parties acknowledged that MMPA – the party with the superior interest in the real estate as the owner of the building and of the improvements and renovations being made – would select which independent contractors it wanted to perform the work. Therefore, when MMPA signed the amendment to the lease, it was undertaking to have the "Landlord's Work" performed *for itself* to part of the building it owned – and would continue to own even after all of the work was completed.[4] MMPA hired independent contractors – not subcontractors – including McQuitty to perform the work on its building. Consequently, MMPA is not Divino's statutory employer under Code § 65.2-302(B).[5]

---

[4] This point distinguishes the case from <u>Princess Anne Builders, Inc. v. Faucette</u>, 37 Va. App. 102 (2001), which Divino contends controls here. Although Princess Anne Builders was an "owner" because it owned the property on which it was constructing a house, Princess Anne Builders was "engaged routinely in the business of purchasing lots from a developer, doing site work, and constructing homes on these lots pursuant to a contract with a prospective buyer." <u>Id.</u> at 104. Unlike in this case, where MMPA would continue to own the property, Princess Anne Builders, who regularly built houses to sell, did contract to perform or execute work for the future new owner, who was in the process of buying that property from Princess Anne Builders.

[5] If MMPA were a statutory employer under Code § 65.2-302(B) and the facts of this case, the consequences of the logical extension of that holding would reverberate beyond even the commercial landlord scenario now before us. At oral argument before this Court, counsel for the UEF stated that Code § 65.2-302(B) could even apply to a homeowner who makes renovations for a tenant renting out a room in his home. Viewing the statute as the Commission has unanimously done, however, results in a clear, more logical holding commensurate with the General Assembly's intent in Code § 65.2-302. The following example exemplifies what are the principles in this case and shows the problem with the UEF's position. A homeowner rents out a bedroom and bathroom to a tenant and later agrees to renovate the bathroom to make it more appealing to the tenant to renew the lease. The homeowner hires a general contractor who, in turn, hires several subcontractors, including an electrician. If an employee of the electrician is

III. CONCLUSION

In short, we cannot say that the Commission erred in unanimously denying Divino benefits because Divino failed to prove that any of the alleged employers are liable for his injuries under the Workers' Compensation Act. Divino made several arguments to this Court on appeal regarding his actual employer, McQuitty. However, this Court cannot reach his arguments regarding McQuitty because none of them were preserved for appeal. Consequently, we affirm the Commission's finding that McQuitty did not have at least three or more employees regularly in service in Virginia and, therefore, that McQuitty is not subject to the Act.

The Commission also did not err in finding that Cavalier was not Divino's statutory employer. Cavalier did not contract with MMPA to perform the "Landlord's Work," and Cavalier also did not contract with McQuitty to perform the flooring work. The Commission made a finding of fact below that Cavalier was merely acting as an agent for MMPA, and, as such, Cavalier could not be Divino's statutory employer.

Finally, the Commission did not err in finding that MMPA was not Divino's statutory employer. The lease agreement between MMPA and CoreVelo gave MMPA – the owner of the property and the owner of the improvements being made to it – the right to decide which contractors would perform the work on MMPA's own building. Therefore, those contractors were independent contractors – not subcontractors – as they went about the work for MMPA on its own building.

---

injured while doing the work, the homeowner would not be liable as the injured worker's statutory employer. Like MMPA, who continued to own the Time Building, including the rented suites undergoing the renovations there, the homeowner (who would continue to own the rented bathroom being renovated) did not "contract[] to perform or execute any work *for another*," as Code § 65.2-302(B) requires. Consequently, the homeowner would not be the injured worker's statutory employer – just as commercial landlord MMPA would not be Divino's statutory employer.

For all of these reasons, we affirm the decision of the Workers' Compensation Commission.

Affirmed.